Argued March 31, affirmed May 1, 1975

ESKO, *Appellant, v.* LOVVOLD ET AL,
*Respondents.*
534 P2d 510

*Jerry K. McCallister* of MacDonald, Dean, Mc-

Callister & Snow, Astoria, argued the cause for appellant. On the brief was Jeanyse R. Snow, Astoria.

*Edward H. Warren* of Hershiser, Mitchell & Warren, Portland, argued the cause for respondents. Also on the brief was William H. Mitchell, Portland.

O'CONNELL, C. J.

This is an action to recover for personal injuries sustained by plaintiff when a utility pole, owned and maintained by defendants, upon which plaintiff was working broke and fell to the ground. Plaintiff appeals from a judgment entered on a directed verdict.

At the time of the accident plaintiff was employed as a lineman by Cox Cablevision, which provides television programming by coaxial cable in Astoria, Oregon. Plaintiff's principal duties consisted of installing and repairing cable on the top of utility poles, a task at which he had considerable experience.[1]

Defendants own and operate a trailer park in Astoria. Each trailer site is supplied with electrical, telephone and television service by means of overhead cables strung on standard 35-foot utility poles from which the cables are then led to 18-foot posts. Both the poles and posts are owned and maintained by defendants and are located on defendants' land. In January 1971, a wind storm caused one of the posts to crack and lean. After the storm, defendant Howard Lovvold inspected all the poles and posts, then approximately ten years old, to determine if any others warranted replacement. The inspection consisted of examining the poles and posts visually for signs of decay, and jabbing a knife or screwdriver into them

---

[1] Plaintiff began working for Cox in 1964. He had worked previously for an electric utility in substantially the same capacity.

four or five feet off the ground. He testified that penetration into the poles and posts by this method would serve as an accurate measure of their soundness.

On the basis of this inspection, defendant determined that five of the posts but none of the poles required replacement. He replaced the unsatisfactory posts on the day before the accident. This required the re-stringing of the television cables from the poles to the new posts. Cox Cablevision was called to do the work. Plaintiff and another Cox Cablevision employee were sent to do the job.

Before plaintiff climbed the pole he inspected it visually for cracks, rot and cavities. The pole appeared to be an ordinary cedar pole. He saw no need to make further tests. Plaintiff's co-worker also examined the pole and agreed that it looked "perfectly safe."

Plaintiff placed a ladder against the pole and did some preliminary work on the pole after which he descended to attach the coaxial cable to a messenger wire. Upon re-ascending, he belted himself to the pole at which time the pole broke at ground level. Because the safety belt was attached to the pole, plaintiff fell with the pole and suffered serious personal injuries.

After the accident, tests of the pole by a chemist, who was an expert in testing timber and timber products, revealed that the pole was in an advanced state of decay at the core but sound at the surface. He testified that this could not have been revealed by visual inspection.

At the close of their case, defendants moved for a directed verdict. The motion was granted on the theory that defendants were under no duty to discover or correct defects in the pole because this was in the area of plaintiff's special expertise.

The trial court's ruling was based upon the authority of our decision in *Yowell v. General Tire & Rubber,* 260 Or 319, 325-26, 490 P2d 145 (1971), in which we held that:

"A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses.

"* * * We prefer to hold that the property owner or the contractee (as the case may be) owes no duty, rather than to hold that the independent contractor or his employee assume the risk. We also believe that the rule should be stated more broadly so that it covers not only the dangers of which the independent contractor and his employees knew but also those dangers of which they, in the exercise of their expertise, should have known."

We agree with the trial court that the rule stated in *Yowell* is controlling in this case. Plaintiff's employer held itself out to the public as having proficiency in the installation and maintenance of a cable strung on poles. Plaintiff, a lineman of considerable experience, was fully cognizant of the risks and dangers of his trade.[2] Defendants were not shown to possess any special expertise or familiarity with poles beyond that possessed by an ordinary landowner, and had no actual knowledge of the defect in the pole.

---

[2] Accidents similar to that suffered by plaintiff have been the frequent subject of litigation. Even in suits brought by the employee against the employer, courts generally have held that an experienced lineman is expected to rely upon his own judgment in deciding whether a pole is safe to climb. *See, e.g.,* McGorty v. Southern New Eng. Tel. Co., 69 Conn 635, 38 A 359 (1897); McIsaac v. Northampton Electric Etc. Co., 172 Mass 89, 51 NE 524 (1898); Hines v. Martel Telephone Co., 127 Neb 398, 255 NW 233 (1934).

Under these circumstances, defendants were entitled to rely upon the expertise of plaintiff and his employer to deal with unknown dangerous conditions necessarily encountered in the performance of their special skills.[8]

Affirmed.

---

[8] *See also* Wriglesworth v. Doyle, 244 Or 468, 472-3, 417 P2d 999 (1966).