Argued and submitted October 13, reversed and remanded on count one of Armando Flores' claim for relief and on count two of Linda Flores' claim for relief; otherwise affirmed December 13, 1989, reconsideration denied February 2, petition for review denied March 27, 1990 (309 Or 521)

FLORES et al,
*Appellants,*

*v.*

METRO MACHINERY RIGGING, INC.,
*Respondent.*

(A8709-05545; CA A49384)

783 P2d 1024

Graham Walker, Portland, argued the cause for appellants. With him on the briefs were James O. Goodwin, West Linn, and Mitchell Crew, Portland.

Thomas M. Christ, Portland, argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

Plaintiffs Armando Flores (Armando) and Linda Flores (Linda), his wife, brought this action against defendant Metro Machinery Rigging, Inc. (Metro) to recover damages for personal injuries and loss of consortium resulting from Armando's slip and fall while working at a construction site. Armando asserted claims for common law negligence and for violations of the Employers' Liability Act (ELA), ORS 654.305 to ORS 654.335, and the Oregon Safe Employment Act (SEA). ORS 654.001 to ORS 654.295. Linda asserted SEA and common law negligence claims. The trial court granted motions to dismiss Armando's ELA and SEA claims, and both of Linda's claims, for failure to state claims for relief. ORCP 21A(8). Plaintiffs refused to plead again, and the court entered judgment for Metro pursuant to ORCP 67B.[1] Both plaintiffs appeal. Metro concedes that the court erred in dismissing Linda's common law negligence claim; we reverse on Armando's ELA claim and affirm on both SEA claims.

Because the court decided the case under ORCP 21A(8), we take the facts from the amended complaint. Armando worked for Sabre Construction Company (Sabre), the prime contractor, as a supervisor on a project to build an addition to an industrial building. Metro was a subcontractor on the project. Its job was to install an overhead crane in the ceiling of the addition. It brought a personlift and a forklift to the construction site; only its employees used them. The lifts leaked small amounts of hydraulic fluid onto the newly poured and glazed cement floor of the addition. Metro failed to remove or control the leaking fluid, and Armando was injured when he slipped in it. He did not allege that Metro and Sabre were engaged in a common enterprise at the time of his injury.

We first consider the ELA claim. ORS 654.305 requires

"all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees[2] or the public"

---

[1] Plaintiffs abandoned their appeal of the ORCP 67B judgment in favor of High Reach, Inc., the other defendant, before briefing.

[2] The 1989 edition of the Oregon Revised Statutes has changed the spelling of "employe" to "employee."

to use all practicable precautions for the protection of life and limb, without regard to cost. The question is when that duty creates liability to one who is not the direct employee of the defendant. According to Metro, it can be liable under the ELA as an indirect employer only if there was a connection between its work or equipment and the work of Sabre, Armando's direct employer. Because Armando has failed to plead that there was, Metro argues, he has failed to state an ELA claim.

The leading Supreme Court case is *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961). The court explained the conditions under which one employer may be liable to another's employee under the ELA:

> "The treatment of the defendant as the employer of one whom he has not *directly* employed to do the work out of which the injury arises can be justified on the ground that the plaintiff becomes the defendant's employee in the sense that the plaintiff is performing work on a project of which defendant's operations are an integral part. The plaintiff becomes, in effect, an adopted employee to carry out the work project in which plaintiff's actual employer and his adoptive employer are participating. *To draw the defendant into the employer-employee relationship in this sense, it must be shown that the defendant was one 'having charge of, or responsible for the work.'* " 225 Or at 545. (First emphasis in original; second emphasis supplied.)

Numerous cases since *Thomas* have discussed the type and degree of control that a defendant must have to be liable under the ELA for an injury to another's employee. The Supreme Court has summarized its decisions:

> "[T]he defendant must be in charge of or have responsibility for work involving risk or danger in either (a) a situation where defendant and plaintiff's employer are simultaneously engaged in carrying out work on a common enterprise, or (b) a situation in which the defendant retains a right to control or actually exercises control as to the manner or method in which the risk-producing activity is performed." *Miller v. Georgia-Pacific Corp.,* 294 Or 750, 754, 662 P2d 718 (1983).

Armando did not plead that Metro and his employer were simultaneously engaged in carrying out work on a common enterprise. The question, then, is whether he pled that Metro had retained a right to control, or actually exercised control, as to the manner or method of performing the activity

that led to his injuries. He did, because he alleged that, on the date of his injury, Metro was "in exclusive control and operating" the lifts.

As part of his pleading, however, Armando also had to show that there was some connection between his employer's work and the work that Metro's employees were doing. *Thomas v. Foglio, supra,* 225 Or at 545-547. It is not enough, for instance, that a defendant simply delivered materials to a job site. *See Steiner v. Beaver State Scaffolding Equipment Co.,* 97 Or App 453, 777 P2d 965 (1989); *Dingell v. Downing-Gilbert, Inc.,* 81 Or App 545, 726 P2d 937 (1986), *rev den* 302 Or 614 (1987). Similarly, a railroad in the process of delivering freight cars to a shipper's yard does not thereby become an ELA employer as to the shipper's employees. *Parks v. Edward Hines Lbr. Co. et al,* 231 Or 334, 372 P2d 978 (1962). On the other hand, a defendant who has control of the work or instrumentality that injures a plaintiff is subject to ELA liability. *Miller v. Georgia-Pacific Corp., supra; Wilson v. P.G.E. Company,* 252 Or 385, 395, 448 P2d 562 (1968).[3]

■     This case falls between the categories that those cases reflect. Metro did not simply deliver the lifts to the site but, rather, was actively using them in the process of carrying out its subcontract at the time of the injury. Although Metro had no direct control over Armando or his work activities, it was working on the same project, in the same location and at the same time as his employer. While doing so, Metro operated and maintained potentially dangerous equipment. Armando pled that Metro knew that employees besides its own would be working in the same area and would be affected by its maintenance of the equipment and that it failed to clean up hydraulic fluid that leaked from its equipment and caused the injury. Those allegations are enough to show that Metro was Armando's indirect employer under the ELA. The trial court erred, therefore, in dismissing his ELA claim.

We next consider both plaintiffs' SEA claims. It may be that a person who is an employee under the SEA has a statutory claim against an employer for an injury that results

---

[3] We disagree with plaintiffs' contentions that the cases are inconsistent and that amendments to the Workers' Compensation Law make some or all of them inapplicable.

from a violation of the SEA or the rules adopted under it. *See Dunlap v. Dickson,* 307 Or 175, 765 P2d 203 (1989); *Shahtout v. Emco Garbage Co.,* 298 Or 598, 695 P2d 897 (1985); *Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983). However, to assert such a claim, a plaintiff must plead membership in the class that the statute is designed to protect. *Dunlap v. Dickson, supra,* 307 Or at 179. That requires that the plaintiff be an employee.

ORS 654.005(4) defines "employee" for the purposes of the SEA:

> " 'Employee' means any individual * * * who engages to furnish services for a remuneration, financial or otherwise, *subject to the direction and control of an employer,* and includes * * * any individual who is provided with workers' compensation coverage as a subject worker pursuant to ORS chapter 656, whether by operation of law or by election." (Emphasis supplied.)

ORS 654.005(5) defines "employer" as "any person who has one or more employees." In *Accident Prev. Div. v. Stadeli Pump,* 18 Or App 357, 364, 525 P2d 170 (1974), we said:

> "It would appear from the definitions in our safety Act * * * that an employer is responsible only for the safety of working conditions of his own employes."

The purpose of the SEA is to require an employer to take necessary steps to protect its own employees, not those of other employers. The SEA, unlike the ELA, does not extend its coverage to indirect employees. Thus, assuming without deciding that an employer may be subject to statutory liablity for injuries resulting from a violation of the SEA, that liability extends only to its own employees. The trial court did not err in dismissing plaintiffs' SEA claims.[4]

Reversed and remanded on count one of Armando Flores' claim for relief and on count two of Linda Flores' claim for relief; otherwise affirmed.

---

[4] Of course, rules adopted under the SEA may be relevant to plaintiffs' ELA and common law negligence claims, even if Metro is not liable under the SEA directly. *See Shahtout v. Emco Garbage Co., supra.*