Argued and submitted December 4, 1996, reversed and remanded in part;
otherwise affirmed February 12, 1997

Chester GERMAN,
*Appellant,*

*v.*

Keith MURPHY,
dba K.J. Murphy Construction,
dba K.J. Murphy Enterprises,
Hayden Corporation,
dba Hillman Properties Northwest,
and Joe Murphy,
dba K.J. Murphy Construction,
*Defendants,*

*and*

DONALD M. DRAKE CO.,
an Oregon corporation,
*Respondent.*

(9503-01375; CA A92761)

932 P2d 580

Nancy F.A. Chapman argued the cause and filed the briefs for appellant.

Jennifer K. Oetter argued the cause for respondent Donald M. Drake Co. With her on the brief were Carl R. Rodrigues and Lehner, Mitchell, Rodrigues & Sears.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Plaintiff appeals from a summary judgment for defendant on plaintiff's claims against defendant for violation of the Employer's Liability Act (ELA) (ORS 654.305 *et seq*), negligence and negligence *per se*. We conclude that there are genuine issues as to material facts with respect to plaintiff's ELA and negligence claims, ORCP 47 C, and, accordingly, reverse and remand as to them. Because defendant is entitled to judgment as a matter of law on plaintiff's claim for negligence *per se*, we affirm the trial court's granting of summary judgment on that claim. ORCP 47 C.

Hayden Corporation (Hayden) owned a three-story building that needed renovation. In November 1993, Hayden contracted with plaintiff's employer, K.J. Murphy Construction (Murphy), to perform demolition work at the site. Hayden contracted with another company to provide asbestos abatement and with defendant to reconstruct and remodel the building. Hayden's contracts with Murphy and defendant contain clauses that make each contractor responsible for the safety of its own employees or subcontractors.

On May 6, 1994, plaintiff was performing demolition work near the building's rooftop penthouse. He fell through a hole in the roof and was injured. He subsequently filed this action against defendant, claiming that defendant violated the ELA and also was negligent by failing to: (a) construct a railing or other barrier around the opening through which plaintiff fell and (b) cover the opening through which plaintiff fell.[1] He also alleged that defendant was negligent *per se* in violating the Oregon Occupational Safety and Health Code (OOSHC), sections 1926.500(b)(1) and (7), by failing to guard the opening with a railing or cover.

---

[1] ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Defendant moved for summary judgment on the grounds that the ELA did not apply to defendant, that there was no evidence that defendant owed a duty to plaintiff or of defendant's negligence, and that defendant could not be held liable under OOSHC for plaintiff's injuries. Plaintiff responded, submitting several exhibits and affidavits by two of plaintiff's coworkers, Allen Salois and Kenny Trainer. The exhibits consisted of daily reports written by Richard Perrine, defendant's superintendent for the project; portions of Perrine's deposition; memoranda written by Perrine that discussed a site safety meeting and a list of the workers who attended the meeting; an offer, dated March 28, 1994, from defendant to Hayden to provide temporary protection at roof and floor openings; and a report of plaintiff's accident written by Perrine. Defendant moved to strike certain portions of the Salois and Trainer affidavits and to strike all of the exhibits. The trial court granted defendant's motion. Based on a summary judgment record that, with respect to plaintiff, contained only small portions of the Salois and Trainer affidavits, the trial court ruled that plaintiff had provided no evidence to raise any genuine issue of material fact and granted summary judgment to defendant. Plaintiff moved for reconsideration of the rulings on the admissibility of the exhibits. The trial court granted reconsideration and ruled that all of plaintiff's exhibits were admissible except for the stricken portions of the Salois and Trainer affidavits. The trial court then reconsidered the question of whether plaintiff had raised a genuine issue of material fact on any claim sufficient to defeat defendant's motion for summary judgment and concluded that plaintiff had not done so.

Plaintiff challenges the trial court's granting of defendant's motion for summary judgment, arguing that the court "did not exercise its duty of viewing the record 'in a manner most favorable to' plaintiff, as required by ORCP 47." He also contends that the record contains evidence from which an objectively reasonable juror could find that defendant was liable to plaintiff under the ELA and evidence that defendant had undertaken supervision and control of safety at the job site, creating a duty to exercise reasonable care towards plaintiff.

Defendant responds that there is no evidence in the record to support any of plaintiff's claims for relief. According

to defendant, each contractor was responsible for a distinct phase of the work, defendant's employees did not supervise plaintiff, defendant's and Murphy's employees were not commingled, defendant did not have charge or control of the instrumentality that caused plaintiff's injury, plaintiff was not an adopted or indirect employee of defendant and defendant owed no duty to plaintiff.

Summary judgment is appropriate under ORCP 47 if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to plaintiff, the nonmoving party, to determine whether plaintiff has produced evidentiary materials that include specific facts showing that there are genuine issues for trial. *Carl v. Oregon Automobile Ins. Co.*, 141 Or App 515, 520, 918 P2d 861 (1996). The narrow question before us is whether plaintiff's exhibits, combined with the admissible portions of the Salois and Trainer affidavits, raise any genuine factual issues for trial regarding defendant's responsibility for plaintiff's safety and for guarding or covering the opening through which plaintiff fell.

■    In his first assignment of error, plaintiff challenges the trial court's granting of defendant's motion to strike portions of the Salois and Trainer affidavits. The court ruled that the bulk of the Salois and Trainer affidavits were "either conclusory or not founded on personal knowledge or both." Whether an affidavit meets the requirements of ORCP 47 D is a question of law. We have reviewed the affidavits and conclude that the trial court erred and that, with the exception of paragraph 6 of the Trainer affidavit, both affidavits are founded on personal knowledge and set forth such facts as would be admissible in evidence. ORCP 47 D. Consequently, they should be considered as part of the summary judgment record.

■    Plaintiff's second and third assignments of error reduce to the question of whether the trial court erred in ruling that there are no genuine issues of material fact regarding plaintiff's claims against defendant. Viewed in the manner most favorable to plaintiff, the summary judgment record reveals that Perrine was on the site regularly and supervised the work of defendant's employees and other subcontractors.

Salois' and Trainer's affidavits state that Perrine supervised the entire project, not just defendant's employees. As part of that supervision, Perrine would walk the entire job site and record the completed work on "Daily Report Sheets" that outlined the work progress of the various subcontractors on the job, as well as defendant's daily work progress. Every daily report, under the heading "Work Progress - DMD [defendant Donald M. Drake]," contains the entry: "review, coordinate and supervise the work." Many of the reports also indicate that defendant included "general safety" and "safety walks" as part of its work. Perrine gave Salois, a Murphy employee, directions and told him what needed to be done with the demolition work to stay on Perrine's schedule. Although Perrine never specifically told plaintiff to do anything, plaintiff's deposition states that he knew that Perrine was "the big boss."

The record on summary judgment also reveals that Perrine held weekly "foremen's meetings," where all of the foremen of the various subcontractors on the job would meet with Perrine to review work schedules and the work being performed and to discuss problems, schedule changes, safety and whether weekend work was needed to stay on Perrine's schedule for the job. In addition to the weekly "foremen's meetings," Perrine also held monthly "site safety" meetings at which he discussed site safety concerns and unsafe conditions. On April 12, 1994, almost a month before plaintiff's injury, Perrine sent a letter concerning a site safety meeting to Murphy and the other companies working at the site. The letter was to the attention of "All Field Supervisors" and stated that, except for those doing asbestos abatement on the first floor, it was "mandatory that all workmen working on site attend." At more than one of the site safety meetings, Perrine gave Murphy employees instructions about how to safeguard the areas where they were performing demolition work and how to cover holes in the floor and the roof.

The summary judgment record further reveals that, before plaintiff's injury, defendant's ability to perform its work was being hampered by Murphy's lack of progress with the demolition work. On March 14, 1994, Perrine sent Murphy a schedule of work that "without exception must be accomplished" and asked that Murphy "return in writing the

acknowledgment and acceptance" of the schedule. Defendant's daily reports, beginning in mid-April 1994, indicate that defendant was performing certain demolition work and charging it back to Murphy.

Finally, the summary judgment record reveals that, at the time Murphy employees were performing demolition work on the roof, workers not employed by Murphy also were performing demolition work. On May 3, 1994, for example, a subcontractor performed work for defendant on the roof of the building, which involved cutting openings in the roof; and, on at least one occasion shortly before plaintiff was injured, one of defendant's employees had covered and secured holes in the roof. After plaintiff was injured, Perrine completed a company accident report in which he described the cause of the accident: "After demolition of mech[anical] duct the workmen failed to protect roof opening *or notify Drake to protect opening.*" (Emphasis supplied.)

One way for plaintiff to establish defendant's liability under the ELA is to show that defendant had responsibility for work involving risk or danger and that defendant and Murphy were engaged simultaneously in carrying out work on a "common enterprise." *Miller v. Georgia-Pacific Corp.*, 294 Or 750, 754, 662 P2d 718 (1983). Defendant and Murphy were part of a "common enterprise," if (1) Murphy and defendant participated in a project of which defendant's operations were integral or component parts; (2) the work involved a risk or danger to the employees or the public; (3) plaintiff was an adopted or intermingled employee of defendant; and (4) defendant had charge of, or responsibility for, the activity or instrumentality that caused plaintiff's injury. *Sacher v. Bohemia, Inc.*, 302 Or 477, 486-87, 731 P2d 434 (1987).

The summary judgment record shows that before May 6, 1994, defendant's ability to perform its work was hampered by Murphy's lack of progress with demolition, that defendant's employee, Perrine, gave Murphy a schedule that had to be completed "without exception" and that defendant began performing certain demolition work and charging it back to Murphy. That evidence is sufficient to satisfy the first element of the common enterprise test. The parties do not dispute that the work involved a risk or danger to plaintiff.

Thus, the second element is satisfied. Regarding whether plaintiff was an adopted or intermingled employee of defendant, plaintiff testified that Perrine was "the big boss" at the site. Plaintiff provided evidence that Perrine supervised Murphy employees and told them what to do and that Perrine held mandatory meetings that included Murphy employees. Plaintiff also provided evidence that Perrine supervised the entire project and did not distinguish among the various workers on site. That evidence satisfies the third element of the common enterprise test. The fourth element of the test is satisfied by plaintiff's evidence that Perrine had instructed various workers, including Murphy employees, on how to make their work areas safe and how to cover holes properly; that defendant directed workers to cut openings in the roof three days before plaintiff was injured; and that defendant directed an employee to cover holes on the roof other than the one through which plaintiff fell. Perrine's accident report, in which he noted that "the workmen failed to protect roof opening or notify Drake to protect opening," is additional evidence that defendant had charge of, or responsibility for, the instrumentality that caused plaintiff's injury. Consequently, the trial court erred in granting summary judgment with respect to plaintiff's ELA claim.

■■ We next consider whether summary judgment was appropriate on plaintiff's claim for negligence. The first inquiry is to determine whether some status, relationship or statute created or limited a duty owed by defendant to plaintiff. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). Defendant argues that, because Murphy and defendant signed separate contracts with Hayden, each owed a duty only to its own employees. Plaintiff responds that having undertaken to supervise safety matters, including safety of the demolition openings, defendant was under a duty to exercise reasonable care. As explained above, plaintiff is correct that there is evidence in the summary judgment record that defendant did not limit its supervision to its own employees. There is evidence that defendant assumed responsibility for reviewing, coordinating and supervising the work of Murphy employees, thereby creating a duty to exercise reasonable care towards plaintiff's safety. *Cf. Quackenbush v. PGE*, 134 Or App 111, 894 P2d 535, *rev den* 322 Or

193 (1995) (no special duty created where there is no evidence that the defendants were indirect employers of the decedent). Accordingly, a material issue of fact remains and summary judgment on plaintiff's negligence claim was therefore error.

Finally, we turn to plaintiff's claim for negligence *per se*. Defendant argues that, in order to proceed on the OOHSC claim, plaintiff must provide evidence that he was a direct employee of defendant, which he has not done. Defendant is correct. The OOSHC was adopted pursuant to the Oregon Safe Employment Act (OSEA). ORS 654.025(2). Unlike the ELA, the OSEA does not extend its coverage to indirect employees. *Flores v. Metro Machinery Rigging, Inc.*, 99 Or App 636, 641, 783 P2d 1024 (1989), *rev den* 309 Or 521 (1990). Because plaintiff was not a direct employee of defendant, the trial court did not err in granting defendant's motion for summary judgment on plaintiff's claim for negligence *per se*.

Reversed and remanded with respect to plaintiff's Employer's Liability Act and negligence claims; otherwise affirmed.