Argued and submitted December 16, 1999, affirmed August 30, 2000

Kelly GEORGE,
*Appellant,*

*v.*

Dennis MYERS,
dba Dennis Myers, Designer Builder,
*Respondent.*

(9712-10258; CA A104584)

10 P3d 265

J. Randolph Pickett argued the cause and filed the briefs for appellant.

Bruce R. Gilbert argued the cause for respondent. With him on the brief was Smith, Freed, Heald & Chock, P.C.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals, assigning error to the allowance of summary judgment dismissing his claims for violation of the Employer Liability Act (ELA), ORS 654.305 *et seq.*, and for negligence *per se* and common-law negligence. We conclude that: (1) Defendant is not subject to "indirect employer" liability under the ELA. (2) Defendant, either as a general contractor or a property owner, cannot be liable in negligence *per se* for alleged violation of certain workplace safety rules promulgated under the Oregon Safe Employment Act (OSEA), ORS 654.001 *et seq.* And (3) the "specialized contractor doctrine," *Yowell v. General Tire & Rubber,* 260 Or 319, 325-26, 490 P2d 145 (1971), precludes plaintiff's common-law negligence claim. Accordingly, we affirm.

Viewed most favorably to plaintiff, as the nonmovant, the record on summary judgment discloses the following material facts: Defendant, Dennis Myers, *dba* Dennis Myers, Designer Builder, owned property in Tigard on which he, as general contractor, was building a home for sale to the public. Defendant, who had no employees, hired subcontractors to work on the house. Among those subcontractors was plaintiff's employer, Twin Oaks Construction, a framing subcontractor. Defendant hired Twin Oaks because of its expertise in framing.

Defendant supplied Twin Oaks' owner, Darrell Jackson, with design plans for the house and, in the winter of 1997, Twin Oaks began framing. Defendant checked in at the site almost daily to confer with Jackson, to answer questions, and to insure that Twin Oaks was following his design plans. Although defendant gave Jackson direction with respect to "architectural or design" matters, he did not instruct Jackson, or any Twin Oaks employee, about how the house was to be framed or any other detail of performance.

On February 13, 1997, plaintiff was working with Jackson and another Twin Oaks employee, Gary Grossnickel, framing the third floor of the house. Defendant was not present at the site. After framing three of the exterior walls and several of the interior walls on the third floor, the Twin Oaks personnel were unable to begin framing the

fourth exterior wall because a banded bundle of 200 2" x 4" boards, which had been delivered to the site at Twin Oaks' request, was in the way.

Jackson asked plaintiff to move the boards. Instead of moving the boards four or five at a time, as he had done in the past, plaintiff decided to move the entire bundle at once, using a method that he had learned while working at a lumber mill. Plaintiff placed a six-inch diameter pipe under the bundle and, with Jackson's and Grossnickel's help, attempted to roll the bundle atop the pipe. The three men successfully moved the bundle approximately five feet before the pipe needed to be repositioned to allow the bundle to be moved farther. Plaintiff pried up one corner of the bundle with a five-foot construction crowbar so that Jackson could retrieve the pipe. As plaintiff pried up the bundle, the crowbar slipped, and he fell backwards off the third floor, landing on some stacked lumber and compacted gravel 20-feet below. Plaintiff was seriously injured.

At the time of plaintiff's fall, there was no fall protection of any kind at the construction site, including personal protection devices, guardrails, or netting. Defendant was not involved in the original placement of the bundled 2" x 4"'s and had nothing to do with Jackson's decision to move the boards or the method by which plaintiff attempted to move them.

Plaintiff filed this action against defendant alleging violation of the ELA, as well as common-law negligence and negligence *per se*. With respect to his negligence *per se* claim, plaintiff alleged that defendant had violated the OSEA, and specifically certain regulations pertaining to workplace accident prevention, 29 CFR section 1926.20 [1] (adopted by reference, OAR 437-003-0001(3)(a)), residential construction fall protection devices, 29 CFR section 1926.501(b)(1)[2] (adopted

---

[1] 29 CFR section 1926.20(b) provides, in part:

"(1) It shall be the responsibility of the employer to initiate and maintain such programs as may be necessary to comply with this part.

"(2) Such programs shall provide for frequent and regular inspections of the jobsites, materials, and equipment to be made by competent persons designated by the employers."

[2] *See* 169 Or App at 484-85 (setting forth the text of 29 CFR section 1926.501).

by reference, OAR 437-003-0001(13)(b)), and workplace mandatory safety training programs, 29 CFR section 1926.503[3] (adopted by reference, OAR 437-003-0001(13)(d)).[4]

Defendant answered, denying those allegations and asserting as an affirmative defense that plaintiff's fall was caused by his own negligence in moving the 2" x 4" 's and in failing to use safety precautions. Thereafter, defendant moved for summary judgment with respect to each of plaintiff's claims. With respect to plaintiff's negligence *per se* claim based on the OSEA, defendant asserted that, as a matter of law, the regulations that plaintiff invoked did not apply to defendant because those regulations applied only to employers, and not to owners or general contractors. *See German v. Murphy,* 146 Or App 349, 932 P2d 580 (1997) (concluding that OSEA's coverage does not extend to indirect employees). Defendant also sought summary judgment against plaintiff's ELA claim because defendant did not exercise sufficient control over plaintiff for ELA "indirect employer" liability under any of the three "control" tests articulated in *Miller v. Georgia-Pacific Corp.,* 294 Or 750, 662 P2d 718 (1983). Finally, with respect to plaintiff's common-law negligence claim, defendant asserted that, because it had hired Twin Oaks for its "expertise" in framing, and because the cause of plaintiff's injury—*i.e.,* falling from an upper story—was a hazard associated with the type of work plaintiff was hired to perform, defendant, as owner and possessor of the property, did not owe a duty to protect plaintiff from that hazard. *See Yowell,* 260 Or at 325-26.

The trial court granted defendant's motion and entered judgment dismissing the complaint in its entirety. This appeal followed.

---

[3] 26 CFR section 1926.503 provides, in part:

"(1) The employer shall provide a training program for each employee who might be exposed to fall hazards. The program shall enable each employee to recognize the hazards of falling and shall train each employee in the procedures to be followed in order to minimize these hazards."

[4] The Oregon Administrative Rules adopt by reference specific provisions of the Code of Federal Regulations. For clarity, subsequent citations are to the operative CFR provision only, without reference to the OAR provision.

Plaintiff challenges the trial court's dismissal of each of his claims, raising three assignments of error. For clarity of analysis, we first briefly address plaintiff's second assignment of error, which challenges the dismissal of his ELA claim, and then consider at greater length plaintiff's first and third assignments, pertaining to the dismissal of his negligence *per se* and common-law negligence claims.

■■■ "Indirect employer" liability under the ELA can be premised on any of three disjunctive tests: (1) the "common enterprise" test; (2) the "retained control" test; or (3) the "actual control" test. *Miller,* 294 Or at 754; *Brown v. Boise Cascade Corp.,* 150 Or App 391, 946 P2d 324 (1997), *rev den* 327 Or 317 (1998). Here, there was no evidence supporting the imposition of liability under any of those tests. "Common enterprise"-based liability is inapposite because there is no evidence of a "causal link between the defendant's involvement in joint work and plaintiff's injury." *Brown,* 150 Or App at 397. In particular, defendant was not involved in moving the bundle and did not provide defective equipment that caused plaintiff's injury. *See id.* "Retained control"-based liability is similarly inapposite because there is no evidence that defendant retained control over the method and manner of Twin Oaks' performance and, particularly, the "risk-producing activity" of moving the bundle of lumber. *See id.* at 398. Rather, all evidence is to the contrary—*i.e.,* defendant's retained control pertained solely to the *scope* of the work, *viz.,* whether defendant's performance comported with the architectural design. Finally, there is no evidence that defendant exercised actual control over the method and manner of framing, including Twin Oaks' movement of framing materials. Twin Oaks, and Twin Oaks alone, determined how to move the bundled 2" x 4" 's.

■ We turn, then, to plaintiff's first assignment of error, challenging the trial court's dismissal of his negligence *per se* claim. Plaintiff contends that the trial court erred in dismissing that claim because it erroneously concluded that "defendant, as a general contractor, could not be held liable to plaintiff," because the OSEA regulations plaintiff relied upon apply only to "employers" and it is undisputed that defendant is not an employer as defined by OSEA. Plaintiff asserts that that reasoning was wrong because the trial court failed to

consider 29 CFR section 1926.16 (adopted by reference by OAR 437-003-0001(2)(g)), which, plaintiff contends, obligates general contractors to comply with all "employer" workplace safety regulations regardless of whether the general contractor retains subcontractors to perform part of the work. Alternatively, plaintiff contends that even if the OSEA regulations do not apply to defendant as *general contractor*, defendant, as *owner*, can nevertheless be liable for noncompliance with 29 CFR section 1926.501 (relating to guardrails and other fall protection), because that regulation pertains to workplace structures or safeguards. *See, e.g., Brown,* 150 Or App at 408 (certain safety regulations may apply to owners where the regulation pertains to "workplace structures or safeguards").

■■    To establish negligence *per se,* plaintiff must demonstrate that: (1) defendant violated the OSEA safety regulations; (2) plaintiff was injured as a result of that violation; (3) plaintiff is a "member of the class of persons meant to be protected by the statute"; and (4) the injury that plaintiff suffered is "of a type that the [regulation] was meant to prevent." *McAlpine v. Multnomah County,* 131 Or App 136, 144, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995). Plaintiff acknowledges that we have previously held that, unlike the ELA, "the OSEA does not extend its coverage to indirect employers," and that, thus, noncompliance with the OSEA cannot be the basis for a negligence *per se* claim against an indirect employer. *German v. Murphy,* 146 Or App 349, 932 P2d 580 (1997).[5] Plaintiff argues, however, that *German* was wrong in that regard because the OSEA itself provides that general contractors assume ·all obligations of "employers" under the occupational safety rules. Thus, plaintiff reasons, defendant's noncompliance as an "employer" violated the safety rules, and plaintiff was a member of the class of persons protected from such violations.[6]

---

[5] *German* relied, in turn, on *Flores v. Metro Machinery Rigging, Inc.*, 99 Or App 636, 641, 783 P2d 1024 (1989), *rev den* 309 Or 521 (1990), where we concluded that an indirect employee could not assert a claim for "statutory liability" under the OSEA. *Flores* did not involve a negligence *per se* claim.

[6] Plaintiff asserts, particularly, that defendant's alleged "direct responsibility for the enforcement of these workplace safety violations" distinguishes this case from *Hagen v. Gemstate Manufacturing, Inc.*, 328 Or 535, 542, 982 P2d 1108 (1999), where the pertinent regulation did not directly regulate the defendant, and thus, could not support a claim of negligence but was "admissible to provide some information about whether the defendant met the applicable standard of care."

The success of that argument turns on the meaning and applicability of 29 CFR section 1926.16. That rule states:

"(a) The prime contractor and any subcontractors may make their own arrangements with respect to obligations which might be more appropriately treated on a jobsite basis rather than individually. Thus, for example, the prime contractor and his subcontractors may wish to make an express agreement that the prime contractor or one of the subcontractors will provide all required first-aid or toilet facilities, thus relieving the subcontractors from the actual, but not any legal, responsibility (or, as the case may be, relieving the other subcontractors from this responsibility). *In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract.*

"(b) *By contracting for full performance of a contract * * * the prime contractor assumes all obligations prescribed as employer* obligations under the standards contained in this part, whether or not he subcontracts any part of the work.

"(c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.

"(d) Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of tier, shall be considered subject to the enforcement provisions * * *." (Emphasis added.)

Plaintiff relies on subpart (b) of that regulation for his contention that, defendant, as a general contractor, assumed all "employer" obligations under OSEA construction standards *vis-a-vis* employees of subcontractors. If plaintiff is correct, he may maintain his negligence *per se* claim against defendant because all three of the regulations that plaintiff invokes are "employer" regulations.[7]

---

[7] *See* 169 Or App at 475-76 nn 1-3.

In interpreting regulations, our role is "the same as * * * in determining the meaning of a statute, *viz.*, to determine the meaning of the words used, giving effect to the intent of the enacting body." *Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997). The text of the regulation itself is the best evidence of the enacting body's intent and is the starting point for our inquiry. *Id.* At the first level of our analysis, we also consider the context of the regulation, other related regulations, the statute pursuant to which the regulation was created, and other related statutes. *Id.*; *see generally PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993) (establishing analogous methodology for statutory interpretation). If the intent of the enacting body is clear after consideration of both text and context, our inquiry ends. *Abu-Adas,* 325 Or at 485.

The text of section 1926.16(b), without reference to context, supports plaintiff's contention that a "prime contractor assumes all obligations prescribed as employer obligations under the standards" in Part 1926 "whether or not he subcontracts any part of the work." However, the context of the regulation's enactment contradicts the construction plaintiff espouses.

In 1970, Congress enacted the Occupational Safety and Health Act (OSHA) to reduce employment-related injuries and illness. *See* 29 USC § 651. To provide guidance in the administration and enforcement of OSHA, Congress provided the Secretary of Labor (Secretary) with authority to promulgate "occupational safety and health standards," 29 USC § 655, and, pursuant to that authority, the Secretary issued both general industry standards, *see* 29 CFR Part 1910, and industry-specific standards, such as the construction standards in 29 CFR Part 1926. The general industry standards are the default standards where specific standards do not apply. *See CH2M Hill, Inc. v. Herman*, 192 F3d 711, 717 (7th Cir 1999).

OSHA's specific construction standards are currently designated under 29 CFR Part 1926. Those standards were not originally written for OSHA, but were adopted from existing standards promulgated under the Construction Safety Act (CSA), 40 USC § 333 *et seq. See* 36 FR 7346 (1971);

29 CFR § 1910.12. The CSA, like OSHA, provides occupational safety and health protections to employees. However, the CSA applies only to employees on federal, federally financed, or federally assisted construction projects. 40 USC § 333 *et seq.* OSHA, on the other hand, provides protections similar to those of the CSA but extends those protections to employees in the private sector.

The CSA regulations now, and at the time of their adoption by OSHA, are denominated under several subparts of Part 1926.[8] Subpart A addresses the CSA's general purpose and scope; Subpart B includes general interpretations for purposes of the CSA; and Subpart C and successive subparts contain the substantive safety standards. 29 CFR section 1926.16—the provision that plaintiff contends applies to defendant as general contractor here—is within Subpart B of Part 1926.

· In June 1974, the Secretary, having previously adopted the CSA regulations in 29 CFR Part 1926, amended several sections of the general industry regulations that he had promulgated under 29 CFR Part 1910. Of particular relevance to our analysis in this case was an amendment to section 1910.12. That amendment clarified the scope and application of OSHA's adoption of the CSA construction regulations:

"(a)   Standards. The standards prescribed in Part 1926 of this chapter are adopted as occupational safety and health standards under section 6 of [OSHA] and shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in construction work. Each employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed in this paragraph.

"* * * * *

"(c)   Construction Safety Act distinguished. This section adopts as occupational safety and health standards under [OSHA] the standards which are prescribed in Part

---

[8] Those CSA standards were originally designated as 29 CFR Part 1518. In December 1971, they were redesignated as 29 CFR Part 1926. 36 FR 25235.

1926 of this chapter. Thus, the standards (substantive rules) published in Subpart C and the following subparts of Part 1926 of this chapter are applied. This section *does not incorporate Subparts A and B of Part 1926 of this chapter. Subparts A and B have pertinence only to the application of section 107 of the * * * Construction Safety Act.* For example, the interpretation of the term 'subcontractor' in paragraph (c) of § 1926.13 of this chapter is significant in discerning the coverage of the Construction Safety Act and duties thereunder. However, the term 'subcontractor' has no significance in the application of [OSHA], which was enacted under the Commerce Clause and which establishes duties for 'employers' which are not dependent for their application upon any contractual relationship with the Federal Government or upon any form of Federal financial assistance." 29 CFR § 1910.12 (emphasis added).

That amendment expressed the Secretary's intent to incorporate into OSHA only the CSA's substantive safety rules incorporated in Subpart C (and subsequent subparts) of 29 CFR Part 1926. That is, OSHA did not incorporate either Subparts A or B, including section 1926.16 (which was part of Subpart B). Rather, Subparts A and B were, by their terms, pertinent only to the CSA. 29 CFR § 1910.12(c). That June 1974 amendment to 29 CFR section 1910.12 was retroactively effective to August 1971. 29 CFR § 1910.17. Accordingly, the "general contractor" provision, 29 CFR section 1926.16, which is incorporated in Subpart B, was not adopted as applicable to OSHA.

OSEA was adopted pursuant to authority granted by OSHA. Specifically, OSHA section 667 permitted states to regulate worker safety by developing and enforcing their own laws that would similarly advance the goal of worker safety. *See* 29 USC § 667. However, that provision required each state that sought to regulate employments covered by OSHA to obtain approval of the Secretary before enacting parallel state occupational safety laws.

In 1975, Oregon obtained such approval from the Secretary, who then transferred jurisdiction to the state to administer and enforce Oregon's worker safety laws. 40 FR

18428 (April 28, 1975). The state's law—OSEA and its regulations—became the operative worker safety provisions, completely displacing OSHA. 29 CFR § 1952.107; 40 FR 18428. To retain jurisdiction, OSHA required the state to maintain laws that were at least as stringent as OSHA. 29 USC § 667(c)(2).

For purposes of OSEA, Oregon adopted by reference many of the federal OSHA regulations, including significant portions of the general provisions, 29 CFR Part 1910, and the industry-specific construction provisions, 29 CFR Part 1926. Among those provisions Oregon adopted were 29 CFR sections 1910.11 and 1910.12, as well as most of 29 CFR Part 1926, including those provisions incorporated in Subpart A and B, which were not adopted under OSHA.

Oregon, like OSHA, initially adopted by reference the Part 1926 provisions, including section 1926.16.[9] However, as discussed above, many of those provisions expressly applied only to the CSA and federally funded projects. Oregon thereafter also adopted the amended version of 29 CFR section 1910.12, making its effective date retroactive to August 27, 1971, and, thus, pre-dating the effective date of 29 CFR section 1926.16 and other provisions in Subparts A and B of Part 1926. As set forth above, 169 Or App at 482, 29 CFR section 1910.12 expressly identifies those provisions in 29 CFR Part 1926 that apply only to the CSA, including section 1926.16. *See* OAR 437-002-0001(2) (adopting by reference 29 CFR section 1910.12 published June 27, 1973, 39 FR 23532).

In sum, the retroactive adoption of section 1910.12 effectively repudiated any extension of section 1926.16 beyond the federal contractor/CSA realm to regulation in the private sector.[10] Thus, plaintiff's "general contractors are

---

[9] The OSEA originally granted the Workers' Compensation Board authority to promulgate regulations thereunder. Or Laws 1973, ch 833, § 9. Subsequent amendments to the OSEA vested that authority in the Director of the then Workers' Compensation Department, Or Laws 1977, ch 804, § 36, and currently that authority rests with the Workers' Compensation Board and the Director of Consumer and Business Services. ORS 654.025(1), (2).

[10] Oregon also adopted 29 CFR section 1910.11, which generally expresses the intent to adopt by reference only substantive rules relating to industry-specific standards:

"It bears emphasis that only standards (i.e., substantive rules) relating to safety or health are adopted by any incorporations by reference of standards

'employers' under the OSEA" argument cannot be squared with section 1910.12.

We thus conclude that the history and evolution of 29 CFR section 1926.16, as incorporated into the OSEA, demonstrates that the former precludes the latter's application in this context. Specifically, defendant, as a general contractor, is not an "employer" within the meaning of the substantive safety regulations plaintiff invokes, and thus—as we held in *German*—cannot be subject to negligence *per se* liability for alleged violations of those regulations.

Plaintiff next, and alternatively, argues that, even if the OSEA regulations do not apply to defendant as *general contractor*, defendant, as *owner*, can still be liable for negligence *per se* based on noncompliance with the guardrail provision, 29 CFR section 1926.501(b)(1). As support for that proposition, plaintiff points to *Brown*, where we observed that owners could be liable in negligence *per se* for violation of certain regulations pertaining to "workplace structures or safeguards."[11] 150 Or App at 408.

29 CFR section 1926.501 provides, in part:

"(a)   General. (1) This section sets forth requirements for *employers* to provide fall protection systems. All fall protection required by this section shall conform to the criteria set forth in §1926.502 of this subpart.

"* * * * *

"(b)(1)   Unprotected sides and edges. Each employee on a walking working surface (horizontal and vertical * * *) with an *unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.*

---

prescribed elsewhere in this chapter or this title. Other materials contained in the referenced parts are not adopted. Illustrations of the types of materials which are not adopted are these: * * * the incorporation by reference of Part 1926 in § 1910.12 is not intended to include references to interpretative rules having relevance to the application of the Construction Safety Act, but having no relevance to the application to the Occupational Safety and Health Act." 29 CFR § 1910.11(b) (adopted by reference as OAR 437-002-0010(1)).

[11] As distinguished from rules regulating "work practices or methods." *Brown*, 150 Or App at 408.

"(2) Leading edges. (i) Each employee who is constructing a leading edge 6 feet (1.8m) or more above lower levels shall be protected from falling by guardrail systems, safety net systems, or personal fall arrest systems. Exceptions: When the *employer* can demonstrate that it is infeasible or creates a greater hazard to use these systems, the *employer* shall develop and implement a fall protection plan which meets the requirements of paragraph (k) §1926.502 [regarding fall protection systems criteria and practices]." (Emphasis added.)

By its terms, 29 CFR section 1926.501 expressly requires "*employers* to provide fall protections systems." The regulation makes no reference to "owners." Rather, the regulation "by its terms applies only to employers." *Brown,* 150 Or App at 409. Accordingly, it cannot support the imposition of negligence *per se* liability against defendant *qua* owner. *Id.*

■　　We turn, finally, to plaintiff's third assignment of error, challenging the trial court's dismissal of his common-law negligence claim. That claim alleged, *inter alia,* that defendant failed to "maintain a safe work area," failed to provide Twin Oaks, and plaintiff specifically, with necessary safety equipment, including guardrails, harnesses and nets, and failed to adequately inspect and supervise the work.

The trial court concluded under a premises liability theory that defendant, as an owner, had no duty to plaintiff. In so holding, the court relied on *Yowell,* where the Supreme Court held:

"A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses.

"* * * We prefer to hold that the property owner or the contractee (as the case may be) owes no duty, rather than to hold that the independent contractor or his employee assume the risk. We also believe that the rule should be stated more broadly so that it covers not only the dangers of which the independent contractor and his employees knew

but also those dangers of which they, in the exercise of their expertise, should have known." 260 Or at 325-26.

*See also Esko v. Lovvold,* 272 Or 27, 30-31, 534 P2d 510 (1975) (defendant landowner was entitled to rely upon the expertise of the plaintiff and his employer to deal with unknown dangerous conditions necessarily encountered in the performance of their work as experienced utility cable installers).

Plaintiff asserts that *Yowell* and its progeny are distinguishable from this case in two respects. First, defendant, unlike the defendant in *Yowell,* was *both* a property owner and a general contractor and, by virtue of his status as a general contractor, he should reasonably have foreseen the risk to plaintiff giving rise to a duty of care to prevent that harm. Second, unlike in *Yowell,* the risk or hazard—the possibility of falling from the unguarded, unenclosed third-story—was obvious. *See Yowell,* 260 Or at 325 n 1 (expressly reserving issue of "what duty, if any, defendant would have owed had it known of the defect" or risk).[12]

Plaintiff's first distinction is unavailing. *Yowell* itself noted that its analysis applied equally, regardless of whether the defendant was a land owner or a general contractor:

> "Regardless of whether defendant is to be viewed in its relation to plaintiff primarily as a possessor of land *or as one who contracts for services,* we believe the result in this case should be the same. * * *

> "Plaintiff's employer, the independent contractor, held itself out to the public as being engaged in the business of manufacturing, installing and repairing all kinds of signs. Defendant was therefore entitled to assume, until notice to the contrary, that plaintiff's employer and its employees who were sent to work on defendant's signs were proficient and expert in detecting any defects in signs which formed a danger to those working in or around them. Defendant was not shown to have known of the defect in the sign. Nor was it shown to have had any expertise concerning signs. * * *

---

[12] Plaintiff further asserts that, to the extent his negligence claim is otherwise legally cognizable, the OSEA safety rules are probative of the standard of care. That is correct. *See Hagan,* 328 Or at 542-43; *Shahtout v. Emco Garbage Co.,* 298 Or 598, 605, 695 P2d 897 (1985); *Flores,* 99 Or App at 641 n 4.

"A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses." 260 Or at 324-25 (emphasis added; footnote omitted).

The more difficult distinction—and the one expressly reserved in *Yowell*—is the "obviousness" of the hazard. *Accord Brown,* 150 Or App at 401-02 (the defendant owner was entitled to directed verdict on common-law negligence claims where there was no evidence that the defendant knew that subcontractor, who was the plaintiff's employer, would use unguarded roof as work platform). Although there is no evidence that defendant knew that Twin Oaks would be moving the bundle of 2" x 4" s, defendant, by virtue of his almost daily visits to the site, knew that Twin Oaks personnel, including plaintiff, were working on the unguarded third floor of the house without fall protection.

We conclude, nevertheless, that in the circumstances here, the reasons underlying *Yowell*'s overarching "no duty" principle preclude liability.[13] Indeed, the very obviousness of the risk—coupled with the fact that that risk was inextricably intertwined with Twin Oaks' performance of a specialized task over which defendant neither retained nor exercised control[14]—compels that conclusion. In such circumstances, defendant was entitled to rely on Twin Oaks' "special expertise or knowledge" with respect to the "advisability and efficacy" of fall protection measures in framing homes—and, thus, as a matter of law, was not obligated to undertake

[13] Recast in post-*Fazzolari* terms, *Yowell*'s rule is that the relationship between a possessor of land or contractor and a specialized subcontractor embodies a special "status" or "relationship," taking precedence over application of ordinary principles of general foreseeability. *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987).

[14] Our determination as to plaintiff's ELA claim that there is no evidence that defendant exercised control over the activity in which plaintiff was engaged necessarily requires the same determination with respect to plaintiff's negligence claim.

such measures. *See Brown,* 150 Or App at 402. As we suggested in *Brown,* to impose liability in such circumstances would be "tautological":

> "We note, parenthetically, that, at least in some circumstances, plaintiff's 'obvious hazard' analysis is tautological. For example, if a homeowner hires a specialist to patch a roof or to prune some trees, the risk of a fall is obvious. Under plaintiff's reasoning, the homeowner could be liable in negligence for failing to provide a railing or fall protection." *Id.,* at 402 n 7.

Here, the evidence was uncontroverted that defendant hired Twin Oaks because of its experience and specialized expertise in framing. There was no evidence that defendant had any knowledge or expertise regarding appropriate fall protection in framing multi-story houses. Consequently, *Yowell*'s fundamental principle precludes liability in this case. The trial court properly allowed summary judgment against plaintiff's common-law negligence claim.

Affirmed.