Argued and submitted May 16, reversed and remanded for reconsideration
July 17, 2002

In the Matter of the Compensation of
Martha L. Buss, Claimant.

Martha L. BUSS,
*Petitioner,*

*v.*

SAIF CORPORATION
and Oregon State Police,
*Respondents.*

00-08403, 01-00392; A116019

50 P3d 253

Max Rae argued the cause and filed the brief for petitioner.

Jerome P. Larkin, Special Assistant Attorney General, argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

### HASELTON, P. J.

Claimant seeks judicial review of an order of the Workers' Compensation Board that, claimant asserts, failed to award her adequate permanent partial disability (PPD) compensation. From our review of the Board's order and the administrative law judge's opinion and order, which the Board adopted and affirmed, we are unable to determine whether the Board's consideration of claimant's alleged entitlement to additional PPD was based on an erroneous legal premise. Consequently, we reverse and remand to the Board for clarification on reconsideration.

The material facts, as found by the ALJ and affirmed by the Board, are as follows: Claimant began working in a telecommunications position with the Oregon State Police in 1990. She subsequently developed a bilateral condition, de Quervain's tenosynovitis,[1] in both wrists. Claimant had periods off work and extended periods of reduced hours. In April 1999, SAIF issued a notice of closure awarding scheduled PPD of 5 percent of the left arm and 6 percent of the right arm. Ultimately, the claim was reopened after surgery that was performed on claimant's right wrist in October 1999. Claimant's treating physician released her to gradually return to work in December 1999. By February 2000, claimant was working six hours a day but was experiencing pain. Consequently, in March 2000, claimant's treating physician decreased her work to four hours a day.

On April 11, 2000, an occupational therapist performed a physical capacities evaluation. That evaluation concluded that claimant was capable of bilateral frequent light manipulation activities so long as she employed "ergonomic principles, including pacing and positioning" and "maintained [her wrists] in neutral alignment." The evaluation further stated:

"It is recommended she take breaks every 30 to 60 minutes during this type of activity * * *. Job duties which vary the use of the hands and forearms [are] recommended. Ergonomic assessment of future [job] positions is recommended."

---

[1] Tenosynovitis is an inflamation of a tendon and its enveloping sheath. *Stedman's Medical Dictionary*, 1795 (27th ed 2000).

Claimant's treating physician ultimately concurred in that assessment. Thereafter, in June 2000, SAIF issued a notice of closure, awarding 8 percent PPD for the right wrist/forearm in lieu of the award granted for the right arm at the time of the April 29, 1999, notice of closure and declining to award any further PPD for the left wrist/forearm because there had been "no actual worsening of the left upper extremity condition" since the April 1999 notice of closure.

Claimant requested reconsideration, disagreeing with the impairment findings used to rate her disability. On September 13, 2000, a medical arbiter examined claimant and concluded that claimant "is able to use both wrists subsequent to her accepted condition of bilateral de Quervain's tenosynovitis as per [the April 11, 2000] Physical Capacities Evaluation recommendations[.]"

On October 27, 2000, the Appellate Review Unit (ARU) issued its order on reconsideration. The ARU increased both claimant's left arm and right arm awards to 10 percent PPD. In so determining PPD, the ARU's order emphasized, "The arbiter panel opined the worker is not significantly restricted in the repetitive activities performed by either upper extremity. No value is granted. *See* OAR 436-035-0010(5)."

Claimant appealed the order on reconsideration, disputing the ARU's determination of the extent of PPD.[2] In particular, claimant asserted that, in addition to the 10 percent PPD award for bilateral arm loss, she was entitled to an additional 5 percent award of PPD pursuant to OAR 436-035-0010(5) because she had been significantly limited in the repetitive use of her wrists due to a chronic and permanent medical condition.[3] In so contending, claimant asserted that

---

[2] SAIF also filed a cross-appeal. Although the substance of that cross-appeal is immaterial to our present analysis, SAIF's success on the cross-appeal ultimately resulted in a reduction of the PPD awarded for the left arm from 10 percent to 8 percent. That reduction is not at issue here.

[3] OAR 436-035-0010(5) provides, in part:

"A worker is entitled to a 5% scheduled chronic condition impairment value for each applicable body part, stated in this section, when a preponderance of medical opinion establishes that, due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use of one or more of the following four body parts:

the totality of the medical evidence supported a determination of bilateral chronic condition impairment.

.The ALJ rejected that argument:

"[C]laimant argues that there is evidence running through this entire record which supports a chronic condition finding. This argument (see claimant's Opening Brief at pages 3 through 5), collides, I think, with the line of cases which hold that no extent of warnings or cautionary restrictions indicating that a worker is likely to experience increased symptoms or materially worsen as a result of repetitive work activity is the equivalent of a statement that a worker is significant[ly] limited in terms of repetitive use. *See Teena M. Headding,* 51 Van Natta 789, 790 (1999) ('Indeed, although the arbiter's comments may imply that claimant's carpal tunnel compression symptoms could recur if she returns to hand intensive work, this prediction, without more, cannot sustain the chronic condition award [citing cases].') *See also Marvin D. Holbert,* 51 Van Natta 843 (1999); *Julie A. Treguboff,* 51 Van Natta 830 (1999). To the extent that these cases may seem contrary to language in *Weckesser v. Jet Delivery Systems,* 132 Or App 325[, 888 P2d 127] (1995), the Board's decisions are more recent and must be followed. *Weckesser,* a scheduled PPD case involving proving the chronicity element in a chronic condition, holds that a chronic condition impairment finding may be made where there was no express medical finding that the condition was chronic, 'so long as the record contains a medical opinion of the claimant's attending physician, or one in which the attending physician has concurred, *from which it can be found* that the worker is unable to repetitively use a body part "due to a chronic and permanent medical condition." ' (Emphasis in original; 132 Or App at 328)."

The Board adopted and affirmed the ALJ's order without amplification or modification.

On judicial review, claimant argues that the ALJ's reasoning quoted above, which the Board adopted, rests on a legally erroneous premise. Specifically, claimant contends that the ALJ presumed that a claimant's proof of chronic impairment for purposes of entitlement to PPD under OAR

---

"* * * * *

"(c) Forearm (below elbow/hand/wrist/) * * *."

436-035-0010(5) is, necessarily, legally insufficient unless that proof includes an express medical statement that the claimant is significantly limited in the repetitive use of the body part as a result of a chronic and permanent medical condition. That is, regardless of the strength of the claimant's medical evidence, such an explicit "statement" is the *sine qua non* of recovery under OAR 436-035-0010(5). Claimant contends that that premise cannot be squared with our opinion in *Weckesser v. Jet Delivery Systems*, 132 Or App 325, 888 P2d 127 (1995)—and, indeed, that *Weckesser* flatly rejected such a "magic words" formulation.[4]

SAIF responds that claimant misreads the ALJ's analysis—or, at least, reads it too narrowly. SAIF does not dispute that, under *Weckesser*, *requiring* an explicit "magic words" statement would be erroneous. However, in SAIF's view, that is not what the ALJ (and, by extension, the Board) did. Rather, SAIF contends, the ALJ's analysis was simply a garden-variety assessment of the evidence—and that, in context, the ALJ's reference to "a statement that the worker is significant[ly] limited in terms of repetitive use" is merely an example of the sort of evidence that would be given greater, more persuasive, weight in evaluating the evidence than would be accorded less explicit "warnings or cautionary restrictions indicating that a worker is likely to experience increased symptoms or materially worsen as a result of repetitive work activity."

After reviewing the record, we cannot tell whether the ALJ's—and, by extension, the Board's—holding rested on the sort of "magic words" approach that we rejected in *Weckesser* or on some broader evidentiary determination.

---

[4] In *Weckesser*, we rejected the Board's apparent belief that, under a prior administrative rule, *former* OAR 436-35-010(6), "the record must contain a medical opinion using the word 'chronic' " before a claimant could recover PPD for a scheduled chronic condition. 132 Or App at 328. We concluded:

"[T]he administrative rule permits the Board to make an award for 'chronic condition impairment' even if the record contains no express medical finding that the condition is 'chronic,' so long as the record contains a medical opinion of the claimant's attending physician, or one in which the attending physician has concurred, *from which it can be found* that the worker is unable to repetitively use a body part 'due to a chronic and permanent medical condition.' " *Id.* at 328-29 (emphasis in original).

Either party's reading is plausible. The ALJ himself acknowledged that his result might not comport with *Weckesser* but indicated that he felt bound to follow subsequent Board authority that "may seem contrary to language" in *Weckesser*. The Board, for its part, affirmed without opinion—and, in doing so, did not address the potential "conflict" that concerned the ALJ and did not indicate that its holding rested on some more general evaluation of the preponderance of the evidence.

Given those circumstances, we cannot determine whether the Board's disposition rested, as claimant contends, on a legally erroneous premise. Accordingly, we reverse and remand for the Board to offer an explanation for its disposition. *See SAIF v. January*, 166 Or App 620, 626, 998 P2d 1286 (2000).

Reversed and remanded for reconsideration.