Argued and submitted May 31, affirmed August 7, 2002

In the Matter of the Compensation of
Enrique A. Gonzalez, Claimant.

Enrique A. GONZALEZ,
*Petitioner,*

*v.*

SAIF CORPORATION
and H & H Cattle Feeders,
*Respondents.*

00-04672; A114224

51 P3d 676

Donald M. Hooton argued the cause and filed the briefs for petitioner.

Jerome Patrick Larkin argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Tiktin, Judge pro tempore.

EDMONDS, P. J.

**EDMONDS, P. J.**

Claimant seeks judicial review of an order of the Workers' Compensation Board (board). He contends that the board erred in holding that he failed to prove "chronic impairment" under OAR 436-035-0010(5), which would have entitled him to an additional permanent partial disability award. We affirm.

Claimant is a farm worker whose right arm was seriously injured when it became caught in some farm machinery. Claimant filed a workers' compensation claim in January 1998, and it was accepted by SAIF, employer's insurer. After surgery and months of missed work, claimant resumed modified employment with employer. He was determined to be medically stationary in September 1999. Claimant's treating physician, Dr. Casey, performed a closing examination. In his report of the examination, Casey concluded that "[claimant] has significant loss of grip strength on the right side, which is probably permanent," and that he "is to continue to do his regular work as best he can if his strength allows him," but that "he does farm work and there is much he can do, but heavy work is not one of them."

SAIF sought clarification from Casey about his conclusions in the closing examination report. Casey responded that he believed that "the reason for [claimant's] loss of strength is his injury requiring significant surgery," that the loss of strength was "valid," and that "the nerve that supplies these muscles was not significantly damaged" but "the body of the muscle itself was damaged." SAIF closed claimant's claim in December 1999 and awarded 14 percent scheduled impairment of the right arm. In February 2000, claimant sought reconsideration of the impairment award from the Appellate Review Unit, arguing in part that he had established an entitlement to an award for a chronic condition under OAR 436-035-0010(5), based on his loss of ability to perform repetitive heavy manual labor. Claimant had an opinion from Casey, in which Casey responded to two questions. The first question asked:

"If [claimant] is generally unable to perform heavy work, would you agree that [he] is also unable to perform repetitive heavy work such as lifting and carrying, pushing or pulling with the right arm, and will be able to perform that kind of activity only with the left arm on a repetitive basis?"

Casey did not answer "yes" or "no" to the questions. Instead, he wrote, "[Claimant] can do pushing & pulling & lifting with right up to 25#." The second question asked:

"Considering that [claimant] is employed as a farm laborer for which heavy lifting is a regular component of the employment, and that [claimant]'s level of education and. related factors make it unlikely that he will readily obtain employment outside the area of manual labor, *would you consider this loss to be a significant loss?*" (Emphasis added.)

Casey answered "yes" to that question. Casey's responses were admitted to the record as part of the hearing on reconsideration.

On reconsideration, the Appellate Review Unit issued an order that increased claimant's scheduled permanent partial disability to 20 percent but disallowed any award for loss of repetitive use under OAR 436-035-0010(5). The order provides, "Dr. Casey did not clearly state the worker was significantly limited in his ability to use his right forearm. Therefore, the worker is not entitled to a rating of chronic condition for his right wrists/forearm." Claimant sought review of the award before the Hearings Division.

After holding a hearing on the issue, the administrative law judge (ALJ) added 6 percent to claimant's permanent partial disability award for a total scheduled permanent partial disability award of 26 percent. As to the issue of an award for repetitive use, the ALJ ruled,

"Claimant argues that, by stating claimant could not push, pull or lift over 25 pounds, [Dr. Casey was asserting that] he also cannot repetitively push, pull or lift above that weight.

"Had Dr. Casey wanted to convey that opinion, he could have checked the box in the affirmative. Further, it would be impermissible to infer that Dr. Casey intended to preclude repetitive use of the *forearm* when he was asked

about use of the *arm*. * * * The arm and forearm are not synonymous when talking about loss of repetitive use. Dr. Casey did not indicate claimant had any loss of use of the arm, as opposed to forearm. The appellate reviewer correctly concluded that the medical opinion was insufficient.

"Finally, Dr. Casey's agreement that claimant has a significant loss taking into consideration his education (farm laborer) and related factors (non English speaking), does not bootstrap into a loss of repetitive use. The loss is significant; it is not repetitive." (Emphasis in original; citations omitted.)

Claimant appealed to the board, which adopted and affirmed the ALJ's order with the following addition:

"Claimant contends that, based on a response from Dr. Casey, his attending physician, he is entitled to a 'chronic' condition award. We agree with the ALJ that claimant failed to establish entitlement to a 'chronic' condition award.

"* * * * *

"* * * [W]e do not find that Dr. Casey's opinion establishes entitlement to an award for chronic condition impairment. Although Dr. Casey's response to claimant's first question might indicate some limitation in repetitive use of the right arm, it does not indicate 'significant' limitation, as required under OAR 436-035-0010(5). In this regard, we have found that indications of 'some limitation' [are] insufficient to meet the requirement of being 'significantly limited in the repetitive use' of a body part under OAR 436-035-0010(5). *See Daralynn Nevett*, 52 Van Natta 1856 (2000); *Carl H. Kimble*, 52 Van Natta 1549 (2000); *Gregory P. Hublitz*, 52 Van Natta 673 (2000); *Lorraine F. Fortado*, 52 Van Natta 446 (2000).

"In addition, claimant's second question essentially asked Dr. Casey to consider various social and vocational factors in rendering an opinion as to whether claimant's loss was 'significant.' * * * However, social and vocational factors are not considered in rating scheduled permanent disability, which is limited to the permanent loss of use or function of a body part due to the industrial injury. ORS 656.214(2); OAR 436-035-0010(2). Consistent with this, OAR 436-035-0010(5) only applies when a preponderance of

medical opinion establishes that, due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use of a body part. Thus, the rule is limited to the determination of a physical impairment, *i.e.*, loss of repetitive use of a body part, and does not extend to consideration of social and vocational factors."

On review to this court, claimant contends that "the board erred as a matter of law when it concluded that a treating physician is precluded from considering social and vocational factors in determining whether a loss of the ability to repetitively use a scheduled body part is a significant loss." His argument depends on the meaning of the words "significantly limited" in OAR 436-035-0010(5). He points out that one potential meaning of the word "significant" is "having or likely to have influence or effect; "deserving to be considered," and "important, weighty, notable." *Webster's Third New Int'l Dictionary*, 2116 (unabridged ed 1993). He concludes that the words *"significantly* limited" in the rule should be understood to allow a consideration of whether the limitation on the worker is "significant" in light of the worker's personal, individualized need to use repetitively the injured body part.

Employer counters that, when the rule is read in context, the applicable rules and statutes make clear that scheduled disability (in contrast with unscheduled disability) is rated solely with regard to the loss of use or function and without consideration of personal factors. It concludes that the board properly construed the rule to disallow a consideration of claimant's social and vocational factors that affect his earning ability and that there is substantial evidence to support the board's finding that claimant did not establish an entitlement to an award for a chronic condition.

We begin with the text of the relevant rule and statute.

"In interpreting regulations, our role is 'the same as * * * in determining the meaning of a statute, *viz.*, to determine the meaning of the words used, giving effect to the intent of the enacting body.' The text of the regulation itself is the best evidence of the enacting body's intent and is the starting point for our inquiry. At the first level of our analysis, we also consider the context of the regulation, other related regulations, the statute pursuant to which the

regulation was created, and other related statutes. If the intent of the enacting body is clear after consideration of both text and context, our inquiry ends." *George v. Myers*, 169 Or App 472, 480, 10 P3d 265 (2000), *rev den* 331 Or 692 (2001) (citations omitted).

ORS 656.214(2) provides, in part:

"When permanent partial disability results from an injury, the criteria for the rating of disability shall be the permanent loss of use or function of the injured member due to the industrial injury."

OAR 436-035-0010 provides, in part:

"(1)   * * * All disability ratings in these rules shall be established on the basis of medical evidence that is supported by objective findings from the attending physician or as provided in OAR 436-035-0007.

"(2)   *Scheduled disability* is rated on the permanent loss of use or function of a body part due to an accepted compensable, consequential, combined condition (pursuant to these rules) and any direct medical sequelae. Except for impairment determined pursuant to ORS 656.726(3)(f)(C), *these losses, as defined and used in these standards, shall be the sole criteria for the rating of permanent scheduled disability under these rules.*

"* * * * *

"(5)   A worker is entitled to a 5% scheduled chronic condition impairment value for each applicable body part, stated in this section, when a preponderance of medical opinion establishes that, due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use of one or more of the following four body parts:

"(a)   Lower leg (below knee/foot/ankle);

"(b)   Upper leg (knee and above);

"(c)   Forearm (below elbow/hand/wrist); and/or

"(d)   Arm (elbow and above)." (Emphasis added.)

We note also that the statutes and rules governing permanent partial *unscheduled* disability specifically provide for

the consideration of age, education, and adaptability to perform a given job. *See, e.g.*, ORS 656.726(4)(f)(A) ("The criteria for evaluation of disability under ORS 656.214(5) shall be permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability to perform a given job.").

■      The language of OAR 436-035-0010(2) limits the criteria that can be considered in the rating of a disability to the losses that are "defined and used in these standards." The words "these losses" in the rule refer to the previously mentioned "permanent loss of use or function of a body part * * * and any direct medical sequelae." The rule thus informs the reader that the rating of disability under it is based solely on the loss of use or function of a body part. The language of the rule is identical to the language of ORS 656.214(2) and is in contrast to the language of ORS 656.726(4)(f)(A), which broadens the relevant considerations of loss in an unscheduled disability rating proceeding to include age, education, adaptability, and impairment.

In light of that context, we turn to the text of OAR 436-035-0010(5). That rule provides for an additional award for chronic impairment of particular body parts. The prerequisite to such an award is that "the worker is *significantly limited in the repetitive use*" of the affected body part.[1] (Emphasis added.) When read in context with subsection (2), the chronic impairment referred to in subsection (5) refers to the defined losses in subsection (2). Thus, the question under subsection (5) is whether the loss of function to a body part created a significant limitation to the worker's ability to use the affected body part repetitively.

To construe the rule as claimant urges, we would have to read subsection (5) as if it said, "due to a chronic and permanent medical condition, the *worker* is significantly limited *due to a loss of* repetitive use of one or more of the following four body parts." That construction would authorize an inquiry into how a particular worker is affected by the loss of repetitive use of a particular body part. That, however, is not

---

[1] *See Buss v. SAIF*, 182 Or App 590, 50 P3d 253 (2002) (discussing the type of evidence that will support a determination of significant limitation of repetitive use).

what the rule provides. OAR 436-035-0010(5) focuses on limitations on the repetitive use of a body part and not on the worker's ability to perform work. We conclude that the board did not err in its interpretation of OAR 436-035-0010(5). We further conclude that the board's finding that claimant did not carry his burden of proof is supported by substantial evidence.

Affirmed.