Argued September 9, affirmed November 5, 1971

YOWELL, *Appellant, v.* THE GENERAL
TIRE & RUBBER COMPANY, *Respondent.*

490 P2d 145

*Edwin A. York,* Portland, argued the cause for appellant. On the brief were Charles Paulson and Gerald R. Pullen, Portland.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondent. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and James B. O'Hanlon, Portland.

Before McAllister, Presiding Justice, and Denecke, Holman, Howell, and Fort, Justices.

HOLMAN, J.

This is a negligence action for damages resulting from personal injuries. Plaintiff appeals from a judgment for defendant based upon an involuntary nonsuit granted at the conclusion of plaintiff's case in chief.

Plaintiff was a sign builder, installer and repairer of 20 years' experience. Defendant was engaged in the tire business and was the possessor of property upon which there was a large, almost square, illuminated plastic advertising sign mounted at the top of a single steel pole. Defendant engaged plaintiff's employer to repair or replace the illuminated tubing in the interior of the sign. Plaintiff was sent to do the work.

The sign was hinged at the top and opened from the bottom where its two halves were bolted together. In order to get at the tubing inside, it was necessary to release the bolts on the bottom and to pull the front outward so that it would pivot on its hinges at the top.

A few feet below the sign which plaintiff was to repair was a second sign mounted on the same pole. This sign was composed of two wooden surfaces (one on each side of the pole) which were held in place by the compression of bolts which ran through both sides adjacent the pole squeezing them to it. The sides of the sign were boxed in so that the inside, where the bolts and the pole ran through, could not be seen. However, the ends of each of three sets of bolts were apparent immediately adjacent each side of the pole. One set was at the bottom of the sign; one at the top; and one in the middle.

Plaintiff took an extension ladder and placed both rails of the upper end against one side of the lower sign and immediately below the bolts which he had to unloosen in the upper sign. After climbing on the bottom rung, he bounced the ladder back and forth to see if the sign was solid. He then climbed the ladder until his head was even with the bottom of the upper sign. He unbolted the bottom of the upper sign and commenced to swing outward the side which faced him when the lower sign, against which his ladder was resting, commenced to turn on the pole and then to slide downward. As a result, the ladder and plaintiff fell and plaintiff suffered the injury of which he complains.

Plaintiff was injured in June of 1967. The lower sign, which gave way, was installed by another sign

company for defendant in 1965. There was expert testimony from another employee of plaintiff's employer that the sign was not correctly installed because either it should have been bolted through the pole, or flanges should have been welded or bolted to the pole at each side and the sign attached to the flanges by bolts. If it had been so installed, it would have been impossible for it to turn and fall when a ladder was placed against one end of it. The expert also testified that all signs should be constructed so that they could support the weight of a ladder, as this was one of the usual means of repair.

Plaintiff charged defendant with negligence in three particulars: 1) in erecting and maintaining a sign which was not bolted through a flange connected to the pole; 2) in failing to inspect the sign and the pole; 3) in failing to warn plaintiff that the sign would slip and give way under his weight when a ladder was placed against it. At the completion of plaintiff's case in chief, defendant made a motion for an involuntary nonsuit on the grounds that there was no evidence of defendant's negligence and, in addition, that plaintiff was negligent as a matter of law. The motion was allowed.

Both parties assume that plaintiff's employer was an independent contractor which chose the manner and method of making the repairs in question. Plaintiff's employer was engaged in the construction, installation and repair of both wooden and electrical signs. Plaintiff's experience, however, was primarily with the manufacture, installation and repair of electrical, and not wooden, signs, as he was an electrician.

The basic contention of plaintiff is that he was upon the defendant's premises as an invitee to whom

the defendant owed a duty to exercise reasonable care to provide a safe place to work. Defendant contends, first, that he owed no such duty of care to an employee of an independent contractor under the holding in the case of *Warner v. Synnes,* 114 Or 451, 230 P 362, 235 P 305, 44 ALR 904 (1925). Defendant also contends that even if a possessor of property normally owes such a duty to the employee of an independent contractor, defendant did not owe plaintiff any duty because the facts of this case fall within a well recognized exception to such a duty which is set forth in Annotation, 31 ALR2d 1375, 1381-382 (1953) entitled "Duty of owner of premises to furnish independent contractor or his employee a safe place of work, where contract is for repairs." The exception is stated as follows:

> "There is a line of cases supporting the proposition that, as an exception to the general rule requiring the owner or occupier of premises (contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair.

> "Closely related to the exception stated above is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees 'assumed the risk.' "

Plaintiff, in turn, contends that this exception has no application where, as in this case, the defect which caused the injury is not the defect which plaintiff's employer was requested to repair.

First, we believe it is important to realize that

two separate legal concepts are being intermingled. One is that of the duty owed to an invitee by a possessor of land; and the other is that of the duty owed by a contractee to the workman of an independent contractor who has been employed to perform services. *See* L. Green, "Assumed Risk as a Defense," 22 La L Rev 77, 85 *et seq.* (1961). The term, "invitee," is used in relation to the duty of the possessor of land. The expression, "a safe place to work," is used in relation to the duty of one who contracts for services.

*Warner v. Synnes, supra,* was a case in which the defendant had contracted with an independent contractor for the repair of a dock. Plaintiff, an employee of the independent contractor, was injured when he used a piece of defective rope which he had found on defendant's premises. The court held that the defendant was not responsible because the independent contractor alone was in control of the conditions under which plaintiff worked. We do not believe it is necessary to decide whether *Warner* is applicable to the facts of this case or whether, after almost fifty years, it still represents the law of this state. We will assume that, under the circumstances, a duty can be owed by one occupying the position of defendant to the employee of an independent contractor.

Regardless of whether defendant is to be viewed in its relation to plaintiff primarily as a possessor of land or as one who contracts for services, we believe the result in this case should be the same. We believe the result should also be the same regardless of whether or not plaintiff was injured as a result of the particular defect he was attempting to repair.

Plaintiff's employer, the independent contractor, held itself out to the public as being engaged in the

business of manufacturing, installing and repairing all kinds of signs. Defendant was therefore entitled to assume, until notice to the contrary, that plaintiff's employer and its employees who were sent to work on defendant's signs were proficient and expert in detecting any defects in signs which formed a danger to those working in or around them. Defendant was not shown to have known of the defect in the sign.[1] Nor was it shown to have had any expertise concerning signs. Any other rule would have required defendant to employ plaintiff's employer, or another expert, first, to inspect the signs for defects which would be a danger to one making the repairs in question and, then, that having been done, to employ him to repair the illumination in the sign.

■ A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses.

■ We believe the present situation falls within a broader application of the so-called related or second rule set forth in the previously quoted ALR annotation. We prefer to hold that the property owner or the contractee (as the case may be) owes no duty, rather than to hold that the independent contractor or his employees assume the risk. We also believe that the rule should be stated more broadly so that it covers not only the dangers of which the independent con-

---

[1] We do not, therefore, have to decide what duty, if any, defendant would have owed had it known of the defect.

tractor and his employees knew but also those dangers of which they, in the exercise of their expertise, should have known.

In *Palenscar v. Michael J. Bobb, Inc.,* 439 Pa 101, 266 A2d 478 (1970), plaintiff was a partner in an electrical contracting business which was retained by defendant for the purpose of determining why the electrical system in a warehouse was inoperable. Plaintiff was burned by an electrical explosion while examining a box containing an electrical circuit breaker. It was not shown that the defect in the circuit breaker which caused plaintiff's injuries was the cause of the loss of electrical power which brought plaintiff to the premises. The court said as follows:

> "The Restatement (Second) of Torts § 343 (1965) defines the liability of a possessor of land to an invitee, particularly with respect to 'Dangerous Conditions Known to or Discoverable by Possessor,' and reads as follows:
>
>> " 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>>
>> " '(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>>
>> " '(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> " '(c) fails to exercise reasonable care to protect them against the danger.'
>
> "This portion of the Restatement has been cited numerous times by this Court as support for the proposition that 'the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee.' Mike v.

Lebanon Miridites League, 421 Pa 217, 220, 218 A2d 814, 815 (1966). It is perfectly clear under Section 343 (b), as quoted above, that Bobb would have no duty to warn an invitee, such as Palenscar, Jr., of a danger which was more obvious to and more likely to be discovered by Palenscar, Jr., than by any employee of Bobb. Repyneck v. Tarantino, 415 Pa 92, 95, 202 A2d 105, 107 (1964). Contrary to the terms of this section of the Restatement, it was the expectation and the *intention* of both the possessor *and* the invitee in the case at bar that the electricians would 'discover or realize the danger,' and, accordingly, 'protect themselves against it.' *That is precisely why they were hired.*" (Last emphasis ours.) 266 A2d at 478.

In *Feldewerth v. Great Eastern Oil Co.,* 149 SW2d 410 (Mo App 1941), plaintiff was in the business of repairing gasoline pumps. He was retained to repair a pump which was not pumping and which also had a leak in it. After repairing the malfunction which caused it to fail to pump, plaintiff was attempting to find the leak when the pump caught fire from defective wiring in a junction box in the pump and plaintiff was burned. The court said:

"The logic of the situation is that when one engages the services of a skilled mechanic to repair a mechanism, he owes the mechanic the duty of disclosing any defect in the mechanism calculated to render it unsafe and dangerous of which he has knowledge at the time, but he does not owe him the duty of exercising mechanical skill and knowledge on his own part to make an examination to discover unsuspected hidden defects before contracting for the repair of the defect that he may know exists. Varas v. James Stewart & Co., 223 Mo App 385, 17 SW2d 651. As we have already indicated, the very purpose in employing a mechanic is to have the benefit of his superior skill and knowledge; and if the thing which results in the mechanic's injury is

a matter about which the owner did not know, then the mechanic, in the common sense of the matter, must be held to have assumed the risk * * *." 149 SW2d at 414.

A different but somewhat similar case is *Wriglesworth v. Doyle,* 244 Or 468, 417 P2d 999 (1966). In that case, defendant, a meat cutter, purchased a building. Seven years later he remodeled it. He hired plaintiff's employer to do the electrical work. While working with some electrical wires, plaintiff climbed upon a false ceiling which gave way with him, causing him to fall and to suffer injuries. The defendant had no knowledge of any defects in the ceiling or of plaintiff's standing on it. We held that defendant was not liable as a matter of law because, under the circumstances, a reasonably prudent building owner had no duty to make such an inspection as would have been necessary to discover the defect. From a defendant's point of view, *Wriglesworth* is a weaker case than the present one. In *Wriglesworth,* plaintiff's employer's expertise was in the electrical, rather than in the carpentry, field.

Plaintiff relies upon *Hendricks v. Socony Mobile Oil Co., Inc.,* 45 Ill App 2d 44, 195 NE2d 1 (1963) ; *Shell Oil Co. v. Blanks,* 46 Tenn App 539, 330 SW2d 569 (1959) ; and *City of Beaumont v. Graham,* 441 SW2d 829 (Tex Civ App 1969). The first two cases can be distinguished on the basis that the plaintiffs' independent contractor employers were not experts in the field which would normally qualify them to detect the defect. In the third case, the court did not discuss the question of the independent contractor's expertise. However, on the facts it would appear to be contrary to our present holding.

The judgment of the trial court is affirmed.