Argued and submitted October 12, 2012, reversed and remanded August 7,
petitions for review denied December 17, 2013 (354 Or 656)

Derek M. SPAIN,
*Plaintiff-Appellant,*

*v.*

Mark JONES,
individually,
dba Mark Jones Construction,
and as Trustee of the Jones 1996 Family Trust;
Keith Rossetto, individually
dba Keith Rossetto Construction;
and David Brown, individually
dba David Brown Construction,
*Defendants-Respondents.*

Jackson County Circuit Court
092402L7; A148635

308 P3d 257

Frederick H. Lundblade argued the cause for appellant.
With him on the brief was Black, Chapman, Webber & Stevens.

Dominic M. Campanella argued the cause for respondent Mark Jones. With him on the brief was Brophy, Schmor, Brophy, Paradis, Maddox & Weaver, LLP.

Ryan J. McLellan argued the cause for respondent Keith Rossetto. With him on the brief were W. Michael Quillen and Smith Freed & Eberhard P.C.

Tracy M. McGovern argued the cause for respondent David Brown. With her on the brief was Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, PC.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

## DUNCAN, J.

Plaintiff, a plumber, fell on a construction worksite and was injured. He filed suit against defendant Jones,[1] who owned the property and was overseeing the construction project, and defendants Rossetto and Brown, who were framing subcontractors on the project, alleging that (1) all three defendants' negligence caused his injuries, (2) Jones was liable for his injuries under a theory of premises-liability, and (3) he was entitled to recover from each defendant under the Employer Liability Law (ELL), ORS 654.305 to 654.336. The trial court granted each defendant's motion for summary judgment and entered a general judgment of dismissal. On appeal, plaintiff argues that the trial court erred in granting summary judgment for each defendant on each of plaintiff's claims. We reverse and remand.

## I.  FACTS AND PROCEDURAL HISTORY

When reviewing the grant of a motion for summary judgment, we view the facts in the light most favorable to the nonmoving party. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). The record, viewed in the light most favorable to plaintiff, establishes the following facts: Plaintiff's employer, Randy's Plumbing, contracted with Jones to do the plumbing work on a house that Jones was building. On November 5, 2007, plaintiff went to the house to do plumbing work, which included putting vents through the roof. He went to the second floor, drilled the necessary holes in the roof, and then walked back toward the stairs along a hallway that was open to the lower level. There was no barrier or other fall protection in place along the edge of the hallway. Plaintiff turned right, intending to go down the stairs, and stepped off the edge. He fell to the ground floor, approximately nine feet below, and was injured.

Jones, who lived in Eureka, California, was building the house for his son and daughter-in-law on property that the Jones 1996 Family Trust owned in Medford. Jones was an experienced general contractor with extensive knowledge

[1] We refer to Mark Jones in his individual capacity and as trustee of the Jones 1996 Family Trust as "Jones."

of fall protection, but he was not licensed in Oregon.[2] Jones oversaw the construction of the house by obtaining the necessary permits, hiring subcontractors, and arranging some of the inspections. He had been to the site only a few times before plaintiff fell, and he was not present when the accident occurred.

Jones orally agreed with Rossetto that Rossetto would frame the house. Rossetto was an experienced framer and had also acted as the general contractor on numerous home construction projects. In the past, as part of his responsibilities as a framing subcontractor, he had held safety meetings regarding fall protection and had installed fall protection along second-floor hallways exposed to the first floor. That fall protection had remained in place while other subcontractors worked on the site until Rossetto's work was complete.

Rossetto testified that, in this case, he did not install fall protection because he had no employees working on the project. For his part, Jones assumed that, as part of Rossetto's responsibility for framing, Rossetto would provide fall protection for areas around the stairwell before other subcontractors began performing interior work. However, Jones and Rossetto did not discuss fall protection at any time before plaintiff was injured.

Rossetto engaged Brown to help him frame the house. He paid Brown a flat fee and the two worked on the project together.[3] Brown also had extensive construction experience, including experience installing fall protection. Brown's practice was to install fall protection in areas where the drop was 10 feet or more. In this case, Brown testified that he "probably" measured the distance from the second-floor hallway to the first floor and concluded that, because the distance was less than 10 feet, no fall protection was needed.[4]

---

[2] The parties do not dispute that Jones was not required to have a contractors' license in Oregon under the circumstances.

[3] One or two "helpers" assisted Rossetto and Brown with the framing. The record does not demonstrate whether they were employees of Rossetto, Brown, both, or neither.

[4] It is possible that Brown's practice was based in OAR 437-003-1501, which sets out the fall-protection requirements authorized by the Oregon Safe Employment

As noted, Jones contracted with plaintiff's employer to plumb the house. The record does not reflect whether that contract was oral or written or what its terms were. When the interior framing was about 90 percent complete, Rossetto notified Jones, who contacted plaintiff's employer and requested that the company send someone out to do the necessary plumbing work. Plaintiff was notified that he should go to the site. At the time of the accident, plaintiff was the only person at the site.

When Jones learned of plaintiff's injury, he was surprised that there was no fall protection installed. The same day, he contacted Rossetto and told him to put up temporary barriers. Rossetto did so, and the barriers remained in place until a permanent system was installed.

Plaintiff had worked on the construction of numerous multi-story buildings, many of which had lacked fall protection, and he did not expect fall protection at the site. He knew that there was a danger of falling off of exposed ledges. However, he had never taken precautions against falling—for example, by installing temporary railings or using a spotter—when working at sites without fall protection.

Plaintiff's expert, Baird, stated that, as the framing contractors, Rossetto and Brown were responsible for installing fall protection on the second floor, including the area where plaintiff fell, and that installation of fall protection by framers is standard industry practice. Baird also stated that it is not the responsibility of a plumbing subcontractor like plaintiff's employer to install fall protection. Plaintiff submitted OAR 437-003-1501(3) and American National Standard (ANSI/ASSE) Rule A10.18-2007, which require the use of fall protection in the area where plaintiff fell, as evidence of the standard of care.

---

Act. That rule generally requires a direct employer to provide fall protection "when employees are exposed to a hazard of falling 10 feet or more to a lower level." One exception to that general rule is the requirement of fall protection for employees "on established floors, mezzanines, balconies and walkways, with an unprotected side or edge 6 feet (1.8 m) or more above a lower level." OAR 437-003-0510(3).

As to Jones, the owner-builder, plaintiff alleged (1) a claim of common-law negligence, essentially for failing to provide fall protection or make sure that Rossetto and Brown provided it;[5] (2) a premises-liability claim, for failing to inspect for and remedy, or warn plaintiff of, the lack of fall protection; and (3) a claim that Jones was liable as plaintiff's indirect employer under the ELL. As to Rossetto, plaintiff alleged (1) a claim of common-law negligence, essentially for failing to provide fall protection,[6] and (2) a claim that Rossetto was liable as plaintiff's indirect employer under the ELL. Plaintiff's allegations against Brown were the same as those against Rossetto. All three defendants moved for summary judgment on all of plaintiff's claims.

The trial court concluded that plaintiff's common-law negligence claims against all three defendants and his premises-liability claim against Jones failed because the "specialized expertise and knowledge doctrine" first employed in *Yowell v. General Tire & Rubber*, 260 Or 319, 490 P2d 145 (1971), barred recovery. It also concluded that the ELL was inapplicable because none of the defendants was engaged in a common enterprise with plaintiff's employer and no defendant retained the right to control or actually exercised control over plaintiff's work. Accordingly, it granted summary judgment to all defendants on all claims.

Plaintiff appeals. In five assignments of error, he challenges the trial court's conclusion as to each defendant on each claim. We must determine whether there are any genuine issues of material fact and whether defendants are entitled to judgment as a matter of law. *Jones*, 325 Or at 420. First we address plaintiff's common-law claims for negligence and premises-liability and then we consider his ELL claims.

---

[5] Plaintiff alleged that Jones was negligent in failing to provide fall protection along the hallway; failing to ensure that fall protection was installed; failing to warn plaintiff of the lack of fall protection; failing to properly supervise and inspect the site; failing to instruct Rossetto or Brown to install fall protection; and allowing other subcontractors like plaintiff to work in the absence of fall protection.

[6] Plaintiff alleged that Rossetto and Brown were negligent in failing to construct or install fall protection; failing to warn plaintiff about the lack of fall protection; allowing other subcontractors like plaintiff to work in the absence of fall protection; and failing to properly inspect the site.

## II.  COMMON-LAW CLAIMS

### A.  *Background*

We begin by summarizing the background legal principles underlying plaintiff's common-law claims. Then we discuss the *Yowell* doctrine, which affects both plaintiff's common-law negligence claims and his premises-liability claim. As explained above, plaintiff alleged (1) a common-law negligence claim against each defendant; (2) a premises-liability claim against Jones only; and (3) an ELL claim against each defendant.

Underlying plaintiff's common-law negligence claims is the premise that, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from [a] defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). Plaintiff contends that the "specialized expertise and knowledge" doctrine established in *Yowell*—which, in a post-*Fazzolari* world, creates a special relationship between a landowner or general contractor and the employee of a subcontractor that limits liability[7]—does not apply here. Consequently, he asserts, the appropriate test for each of his common-law negligence claims is "whether [each defendant's] conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell *** plaintiff." *Fazzolari*, 303 Or at 17.

As to the premises-liability claim against Jones, plaintiff invokes the special relationship between a landowner and an invitee on the property. *See Hughes v. Wilson*, 345 Or 491, 497, 199 P3d 305 (2008) ("The common law imposes a general, nondiscretionary duty on landowners to make their property reasonably safe for their invitees."). He

---

[7] *George v. Myers*, 169 Or App 472, 487 n 13, 10 P3d 265 (2000), *rev den*, 331 Or 692 (2001) ("Recast in post-*Fazzolari* terms, *Yowell*'s rule is that the relationship between a possessor of land or contractor and a specialized subcontractor embodies a special 'status' or 'relationship,' taking precedence over application of ordinary principles of general foreseeability. *Fazzolari*[, 303 Or at 17].").

contends that, in this case, the special relationship described in *Yowell* does not supersede the landowner-invitee relationship. Consequently, he argues, Jones owed plaintiff a duty to make the premises reasonably safe, and his failure to do so caused plaintiff's injury.

In light of those claims, our task is to determine whether, as a matter of law, the relationship between plaintiff and each defendant meets the requirements for the special relationship first established by *Yowell* and, as discussed below, modified in subsequent cases. If it does not meet those requirements, the parties do not dispute that, as to the negligence claims, *Fazzolari*'s general foreseeability principle governs defendants' potential liability to plaintiff, and, as to the premises-liability claim, the landowner-invitee relationship governs Jones's potential liability to plaintiff.

## B. *The Yowell Doctrine*

In *Yowell*, the plaintiff, an electrician who worked for a company that repaired signs, was injured while repairing a sign for the defendant, a tire business. 260 Or at 320-21. In the course of repairing a sign that was installed on a pole, the plaintiff leaned his ladder against a second sign that was on the same pole. The second sign, which had been installed two years earlier by another sign company, had been installed improperly, and it rotated around the pole, causing the ladder to fall and injure the plaintiff. *Id.* at 321. The plaintiff sued the defendant, contending that "[the plaintiff] was upon the defendant's premises as an invitee to whom the defendant owed a duty to exercise reasonable care to provide a safe place to work" and that the defendant had failed to exercise reasonable care by failing to install the sign properly and failing to warn the plaintiff. *Id.* at 322-23.

The trial court granted an involuntary nonsuit at the conclusion of the plaintiff's case-in-chief, and the plaintiff appealed. *Id.* at 320. On appeal, the defendant defended the trial court's ruling, arguing that it did not owe any duty to the plaintiff, the employee of an independent contractor, under a rule set out in 31 ALR 2d 1375, 1381-82 (1958). That rule provided that "'the owner or occupier [of property] is under no duty to protect [the employees of an independent contractor] against risks arising from or intimately

connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair.'" *Yowell*, 260 Or at 323. The plaintiff remonstrated that, while the exception might apply if he had been injured by a defect in the sign that he was repairing, it did not apply because the injury had been caused by a defect in a different sign, which the plaintiff's employer had not agreed to repair. *Id.*

The Supreme Court first noted that, under Oregon law, it was not settled that an occupier of land owed *any* duty to the employee of an independent contractor, regardless of whether the defect that caused the injury was related to the independent contractor's area of expertise. *Id.* at 324. However, for purposes of deciding the case, the court assumed that the occupier of the land could owe a duty to the employee of an independent contractor. It held:

> "Plaintiff's employer, the independent contractor, held itself out to the public as being engaged in the business of manufacturing, installing and repairing all kinds of signs. Defendant was therefore entitled to assume, until notice to the contrary, that plaintiff's employer and its employees who were sent to work on defendant's signs were proficient and expert in detecting any defects in signs which formed a danger to those working in or around them. Defendant was not shown to have known of the defect in the sign. Nor was it shown to have had any expertise concerning signs. Any other rule would have required defendant to employ plaintiff's employer, or another expert, first, to inspect the signs for defects which would be a danger to one making the repairs in question and, then, that having been done, to employ him to repair the illumination in the sign.

> "A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses."

*Yowell*, 260 Or at 324-25 (footnote omitted). The court affirmed the trial court's grant of the involuntary nonsuit. *Id.* at 328.

We discussed *Yowell* in *Brown v. Boise-Cascade Corp.*, 150 Or App 391, 946 P2d 324 (1997), *rev den*, 327 Or 317 (1998). In *Brown*, the plaintiff, a painter who worked for a painting company, was injured when he fell off a roof while he was painting the defendant's paper mill. There was no fall protection in the area where the plaintiff was working. On appeal, the defendant invoked the *Yowell* doctrine, and the plaintiff responded that, where the hazard was obvious—as it was where the plaintiff was injured by falling off an unprotected roof—*Yowell* did not apply.

We suggested, in a footnote, that the holding of *Yowell* might extend to obvious risks. We stated:

> "We note, parenthetically, that, at least in some circumstances, plaintiff's 'obvious hazard' analysis is tautological. For example, if a homeowner hires a specialist to patch a roof or to prune some trees, the risk of a fall is obvious. Under plaintiff's reasoning, the homeowner could be liable in negligence for failing to provide a railing or fall protection."

*Id.* at 402 n 7. In other words, we did not believe that a defendant who has no special expertise in an area should have a duty to provide protection from an obvious risk that is inherent in the plaintiff's work—for example, a roofer's risk of falling off a roof—before allowing the plaintiff to begin working. The nature of risks inherent in the plaintiff's specialized task and the safety measures that will best protect the plaintiff under the circumstances are matters "peculiarly within [the plaintiff's employer's] 'special expertise or knowledge.'" *Id.* at 401 (quoting *Yowell*, 260 Or at 325).

In *George v. Myers*, 169 Or App 472, 10 P3d 265 (2000), *rev den*, 331 Or 692 (2001), we extended *Yowell* in the way suggested by the footnote in *Brown*. There, the plaintiff, an employee of a framing contractor, was injured when he fell from the third floor of a partially framed house while he was moving a bundle of lumber, which was to be used for framing, that was in the framing crew's way. He sought to recover from the defendant, the general contractor on the project. *Id.* at 474-75. When the plaintiff fell, there was no fall protection of any kind at the construction site. The defendant was not involved in placing the pile of lumber and

"had nothing to do with" the plaintiff's employer's decision to move the lumber or the method by which the plaintiff was moving it. *Id.* at 475. The defendant had hired the plaintiff's employer because of its expertise in framing. *Id.* at 474. The trial court held that *Yowell* precluded liability on the plaintiff's common-law negligence claim, which alleged failure to provide safety equipment and failure to adequately inspect and supervise the work and the worksite.

On appeal, the plaintiff asserted that *Yowell* did not apply because, unlike the risk in *Yowell*, which was created by a latent defect, the risk of falling from the unprotected third floor of the house was obvious. We agreed with the plaintiff that the risk was obvious, but we concluded that, in light of the concern that we had expressed in *Brown*, *Yowell* was nevertheless applicable:

> "[I]n the circumstances here, the reasons underlying *Yowell*'s overarching 'no duty' principle preclude liability. Indeed, the very obviousness of the risk—coupled with the fact that that risk was inextricably intertwined with [the plaintiff's employer's] performance of a specialized task over which defendant neither retained nor exercised control— compels that conclusion. In such circumstances, defendant was entitled to rely on [the plaintiff's employer's] 'special expertise or knowledge' with respect to the 'advisability and efficacy' of fall protection measures in framing homes— and, thus, as a matter of law, was not obligated to undertake such measures. *See Brown*, 150 Or App at 402. As we suggested in *Brown*, to impose liability in such circumstances would be 'tautological[.]'
>
> "* * * * *
>
> "Here, the evidence was uncontroverted that defendant hired [the plaintiff's employer] because of its experience and specialized expertise in framing. There was no evidence that defendant had any knowledge or expertise regarding appropriate fall protection in framing multi-story houses. Consequently, *Yowell*'s fundamental principle precludes liability in this case."

*George*, 169 Or App at 487-88 (footnotes omitted). Thus, *George* established that, (1) when a risk is obvious and "inextricably intertwined with [the plaintiff's employer's]

performance of a specialized task"; (2) the defendant lacks expertise regarding and control over the specialized task and, consequently, the risk; and (3) the defendant hired the plaintiff's employer because of its expertise in that work, the defendant cannot be liable for an injury to the plaintiff resulting from the risk.

We applied and extended the doctrine again in *Boothby v. D. R. Johnson Lumber Co.*, 184 Or App 138, 55 P3d 1113 (2002), *aff'd*, 341 Or 35, 137 P3d 699 (2006). There, the decedent, a logger, had been crushed to death by a log loader while he was working at a logging site. His personal representative filed an action against a logging company that had contracted with the State of Washington to log the area. The defendant had subcontracted responsibility for the logging project—including responsibility for safety procedures—to the decedent's employer, a second logging company.

We concluded that, just as the risk of falling while framing in *George* was "inextricably intertwined with" the framing company's specialized task of framing the house, 169 Or App at 487, the risk that the decedent would be killed by logging equipment was inextricably intertwined with the expert work that the defendant had hired the decedent's employer to perform—*viz.*, the logging operation. *Boothby*, 184 Or App at 159. The link between the risk that caused the decedent's death and the decedent's employer's specialized task was evidenced by a contract between the defendant and the decedent's employer that assigned responsibility for day-to-day operations at the site, including safety procedures, to the decedent's employer. The contract demonstrated that the decedent's employer's specialized task included sole responsibility for safety procedures like the ones that could have prevented the decedent's death, and other evidence demonstrated that the decedent's employer actually carried out that responsibility. *Id.* at 161. Proof of that delegation of responsibility for safety procedures was essential because the defendant had previously exercised expertise in logging and safe operation of logging equipment. The *Yowell* doctrine applied despite that expertise because the risk was

inextricably intertwined with the specialized task for which the defendant had hired the decedent's employer. *Id.*[8]

## C. *Application*

Here, there is a genuine issue of material fact about whether plaintiff's risk of falling from the second floor was inextricably intertwined with his performance of the specialized task for which Jones hired plaintiff's employer. Defendants' position is that, similar to the hypothetical roofers discussed in *Brown*, whose risk of falling from the roof was indisputably part of their work as roofers, plaintiff's risk of falling from the second floor was part of his employer's specialized task because plumbing a multi-story building necessarily includes going up to the second floor. That is, they contend that part of plaintiff's job as a plumber—and, consequently, part of the job for which Jones hired plaintiff's employer—is to move around construction sites, including elevated areas that may lack fall protection. On the other hand, plaintiff asserts that his risk of falling was not inextricably intertwined with his employer's specialized task because there is nothing about plumbing—as opposed to, for example, the work of an electrician or another interior subcontractor—that necessarily involves the risk of falling.[9]

---

[8] In affirming our holding in *Boothby*, the Supreme Court noted that, aside from *Yowell*, the defendant could not be liable to the plaintiff under ordinary foreseeability principles because it "neither had any right to control nor exercised any actual control over the way that [the decedent's employer] operated the log loader." *Boothby v. D. R. Johnson Lumber Co.*, 341 Or 35, 46, 137 P3d 699 (2006). The court recognized a "general rule that an owner ordinarily is not liable in negligence for its independent contractor's acts and omissions." *Id.* at 47.

On appeal, as before the trial court, defendants do not contend that the rule that the Supreme Court applied in *Boothby* excuses them from liability as a matter of law. Furthermore, as discussed below, we conclude that whether defendants should have installed fall protection that would have prevented plaintiff's injury or whether plaintiff's employer was responsible for that task is a disputed issue of fact. That is, a fact question remains as to whether plaintiff's injury was caused by plaintiff's employer's omission or defendants' omission. Thus, in this case, the general rule articulated by the Supreme Court in *Boothby* does not justify the grant of summary judgment because it turns on the same factual issue that precludes application of the *Yowell* doctrine as a matter of law.

[9] Among other aspects of the *Yowell* doctrine, the parties dispute the significance of the fact that neither Rossetto nor Brown contracted with plaintiff's employer. Plaintiff contends that the special relationship recognized by the *Yowell* doctrine does not extend beyond the contractual relationship between a defendant and a plaintiff's employer; defendants remonstrate that it should. Because we conclude that a genuine issue of material fact remains to be resolved as to whether

We cannot choose between those competing views because they implicate an unresolved question of fact about the scope of plaintiff's employer's specialized task in this case. As demonstrated by *George* and *Boothby*, the considerations relevant to whether a risk is inextricably intertwined with the plaintiff's employer's specialized task include the terms of the agreement between the defendant and the plaintiff's employer, *Boothby*, 184 Or App at 159, and the defendant's reliance on the plaintiff's employer's expertise in the area and lack of involvement in or responsibility for the risk, *id.*; *George*, 169 Or App at 475, 487.

Here there is evidence supporting both the view that plaintiff's employer was responsible for providing fall protection and the opposite view—that is, that Jones, and, through him, Rossetto and Brown, were responsible for providing fall protection. For example, in favor of the view that plaintiff's employer was responsible for protecting against falls like plaintiff's are the facts that plaintiff did not expect fall protection to be installed, had often worked at sites without fall protection, and knew of the risks of falling from exposed areas. On the other hand, facts suggesting that Jones and, through an agreement with him, Rossetto and Brown, were responsible for protecting against falls like plaintiff's include plaintiff's expert's statement that the industry standard is for a framing contractor, not a plumbing contractor, to provide fall protection and Jones's expectation that Rossetto would install fall protection before other interior contractors began their work.

In *Yowell*, *George*, and *Boothby*, it was beyond dispute that the causes of the plaintiffs' injuries were inextricably intertwined with the specialized tasks for which the defendants had hired the plaintiffs' employers. In *Yowell*, the plaintiff's employer held itself out to the public as expert in all aspects of sign installation and repair, and the defendant hired the plaintiff's employer with the expectation that its employees would be experts able to avoid any injury from defects in signs. In *George*, the defendant hired the plaintiff's

---

the risk of falling was inextricably intertwined with plaintiff's expert task, we do not reach the significance of the lack of contractual relationship between plaintiff's employer and Rossetto and Brown.

employer for its expertise in framing, and the plaintiff was injured by a fall that took place in an area that was being framed under the exclusive control of the framer. In *Boothby*, the defendant hired the decedent's employer for its expertise in logging, including safety procedures, and memorialized that reliance in a contract delegating sole control over safety procedures to the decedent's employer.

In this case, Jones hired plaintiff's employer to plumb the house. In doing so, he may have relied on plaintiff's employer—the plumbing subcontractor—to make judgments about the necessity and advisability of fall protection on the second floor. But that is not the only way to understand the record. It is also possible that the parties intended, in keeping with industry custom, for the framers, not the plumber, to provide fall protection. If that is the case, then the risk of falling from the unprotected second floor was not inextricably intertwined with plaintiff's plumbing work; instead, it was a risk that plaintiff faced only because Jones, Rossetto, and Brown had failed to provide fall protection.

Because a genuine question of material fact remains to be resolved, defendants were not entitled to summary judgment on plaintiff's common-law negligence claims on the basis of the *Yowell* doctrine. For the same reason, Jones was not entitled to summary judgment on plaintiff's premises-liability claim on the basis of the *Yowell* doctrine.

### III.   EMPLOYER LIABILITY LAW

Next we consider whether the trial court properly granted summary judgment on plaintiff's ELL claim against all three defendants. The ELL imposes a heightened standard of care on a person "having charge of, or responsibility for, any work involving a risk or danger to the employees or the public." ORS 654.305.[10] Although the statute uses

---

[10] ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

the term "employees," its application is not limited to direct employees. The ELL also protects "'those whose employment or duties require them to be about machinery of an employer other than his own or whose duties may require such person to expose himself in or about hazardous conditions or structures of such other employer which are prohibited or circumscribed by the Act.'" *Sacher v. Bohemia, Inc.*, 302 Or 477, 482-83, 731 P2d 434 (1987) (quoting *Byers v. Hardy*, 216 Or 42, 48, 337 P2d 806 (1959)).

The Supreme Court has identified three routes to ELL liability for an indirect employer:

> "[ELL] liability can be imposed on a person or entity who (1) is engaged with the plaintiff's direct employer in a 'common enterprise'; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk-producing activity is performed."

*Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 160, 61 P3d 918 (2003); *see also Wilson v. P. G. E. Company*, 252 Or 385, 391-92, 448 P2d 562 (1968) (describing the three routes to indirect employer liability under the ELL). Plaintiff alleged in the trial court, and contends on appeal, that all three defendants are subject to the ELL under each of those theories: (1) defendants and plaintiff's employer were engaged in a common enterprise; (2) defendants retained the right to control the manner or method in which the risk-producing activity was performed; and (3) defendants actually controlled the manner or method in which the risk-producing activity was performed. We conclude that a genuine issue of material fact remains to be resolved on the latter two theories, and, therefore, that the trial court erred in granting summary judgment on plaintiff's ELL claim. As a result, we do not discuss plaintiff's common-enterprise theory.

Here, plaintiff argues that the risk-producing activity was his "walking along the hallway in an area that lacked fall protection," which was part of his plumbing work. He contends that defendants retained control over that activity because "they controlled the work site and conditions that [plaintiff] encountered." Defendants remonstrate that they

did not retain control over the manner or method in which plaintiff performed his plumbing work because they did not direct his choice of how or where to install plumbing fixtures or what safety measures to take.

Plaintiff's view is correct under Supreme Court case law. In *Woodbury*, the Supreme Court explained how to determine the scope of the "work involving a risk or danger to the employees," ORS 654.305, or the "risk-producing activity," *Woodbury*, 335 Or at 160, over which the defendant must maintain or exercise control. In *Woodbury*, the plaintiff was injured when he fell from a platform that his employer, a subcontractor, and the defendant, the general contractor, had decided to use to facilitate installation of a pipeline over a sunken concrete corridor. The fall took place while the plaintiff was removing a board during disassembly of the platform. We held that "the work" that the plaintiff was performing—that is, the risk-producing activity—was the act of disassembling the platform. *Woodbury*, 335 Or at 160. We concluded that the defendant lacked control over that activity because the plaintiff and his employer had decided how to remove the platform without any input from the defendant.

The Supreme Court explained that the relevant determination was the scope of the "work involving a risk or danger," ORS 654.305. With that understanding, our characterization of the work had been too narrow.[11] The court explained:

"While moving the boards, plaintiff was working at a dangerous height over a concrete surface. That height created a constant risk of harm to the employees working on that section of the pipeline. During that part of the project, the risk was reduced by building a platform on which plaintiff could stand while installing that section of the pipeline. The work included both the assembly and disassembly of the platform. The height of the work posed a risk of injury to the employees while the platform was assembled, while it was used to complete the project, and while it was disassembled. The risk of falling, then, was the most obvious

---

[11] The court suggested that our characterization of "the work involving risk or danger" in *George* was also too narrow. *Woodbury*, 335 Or at 160 n 5. Accordingly, we are not persuaded by defendants' reliance on our characterization from *George*.

potential and foreseeable danger during the installation of that section of the pipeline. We conclude that, under these facts, the 'work involving a risk or danger' included requiring plaintiff to work at height during the assembly, use, and disassembly of the platform."

335 Or at 161-62. Thus, the defendant had exercised control over the "work involving a risk or danger" by participating in the decision to use a platform to minimize the risk of falling during installation of that portion of the pipeline.

On the facts of this case, under *Woodbury*, the "work involving a risk or danger"—specifically, the work involving a risk of falling—included not only plaintiff's installation of plumbing fixtures on the second floor, but also his walk along the unprotected second-floor hallway. Thus, that walk was part of the risk-producing activity that plaintiff was required to perform as part of his plumbing work on the house. Plaintiff contends that his exposure to the risk of falling was a result of defendants' failure to install or inspect for fall protection in the hallway. As explained above, whether defendants were responsible for plaintiff's exposure to that risk is a disputed question of fact. If Rossetto and Brown should have installed fall protection, or if Jones should have inspected for fall protection, then they controlled the risk-producing activity. *Woodbury*, 335 Or at 161-62; *see also Boothby v. D. R. Johnson Lumber Co.*, 341 Or 35, 40-41, 137 P3d 699 (2006) (risk-producing activity was operation of the log loader that killed the decedent rather than the decedent's activity at the time of his death).

In sum, the trial court erred in granting summary judgment for defendants on plaintiff's ELL claim because a genuine issue of material fact remains on plaintiff's theory that defendants had actual control over, or the right to control, the risk-producing activity.

Reversed and remanded.