288 July 30, 2025 No. 678

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Danielle PRINCE
in her capacity as the Personal Representative of the
Estate of Trenton Todd Prince,
*Plaintiff-Appellant,*

*v.*

JOE CRONIN LOGGING, LLC,
an Oregon limited liability company,
*Defendant-Respondent,*

*and*

HOWARD RANCH, LLC,
an Oregon limited liability company,
*Defendant.*

Harney County Circuit Court
21CV39441; A182528

Wes Williams, Judge.

Argued and submitted November 18, 2024.

David Wallace, Esq., argued the cause and filed the brief for appellant.

Bruno J. Jagelski argued the cause for respondent. Also on the brief were Simmone Landau and Yturri Rose LLP.

Before Hellman, Presiding Judge, Lagesen, Chief Judge, and Leith, Senior Judge.*

LEITH, S. J.

Affirmed.

_____
  * Leith, Senior Judge, *vice* Mooney, Senior Judge.

**LEITH, S. J.**

Plaintiff, the daughter of Trenton Prince (decedent), brought this wrongful death action against defendants Joe Cronin Logging, LLC (Cronin Logging) and Howard Ranch, LLC (Howard Ranch) after her father died in a worksite accident. The trial court granted summary judgment in favor of defendants. Plaintiff then filed separate appeals as to each defendant.[1] This is plaintiff's appeal from the grant of summary judgment in favor of Cronin Logging. We affirm.

Plaintiff's original and first amended complaints included claims for wrongful death based on negligence and claims under the Employer Liability Law (ELL), ORS 654.305 to 654.336. The second amended complaint (the effective complaint), however, expressly contains only a single claim for relief: wrongful death based on negligence.

Cronin Logging moved for summary judgment on two alternative grounds, contending first that if decedent was working as an employee at the relevant time, then plaintiff's claim for wrongful death based on negligence was precluded by the exclusivity provision of the Workers' Compensation Law, ORS 656.018. Alternatively, Cronin Logging argued that if decedent instead was working as an independent contractor, then the claim was barred as a matter of law by the "specialized contractor" doctrine.

Plaintiff's briefing and argument in opposition to that motion conflated the existing claim for wrongful death based on negligence with a claim under the ELL. Plaintiff relied on precedents interpreting the ELL and standards developed under the ELL. Cronin Logging objected at the summary judgment hearing to plaintiff's attempt to reintroduce the ELL claim back into the case. Plaintiff insisted the ELL claim was still in the effective complaint.

As noted, the trial court granted Cronin Logging's motion for summary judgment (MSJ). The court did not specify which alternative ground it relied on in granting Cronin Logging's motion.

---

[1] We decide plaintiff's other appeal today in *Prince v. Joe Cronin Logging, LLC (A182533)* 342 Or App 371, ___ P3d ___ (July 30, 2025).

On appeal, plaintiff asserts two assignments of error, each corresponding to one of the alternative bases for summary judgment that the court may have relied on below. First, plaintiff argues, "Summary judgment should not have been granted as to Defendant's MSJ that [Workers'] Compensation was the sole and exclusive remedy." The second assignment of error asserts, "Summary judgment should not have been granted as to Cronin's MSJ that there was no genuine issue of material fact in dispute as to Cronin's liability under the [ELL]." Plaintiff's "question presented" on the second assignment of error is whether there were issues of fact in the summary judgment record as to whether decedent would "meet the specialized contractor exception to liability under the [ELL]." Plaintiff's argument on the second assignment of error relies on authorities and standards applicable to a claim under the ELL, not a claim based on negligence.

With respect to plaintiff's first assignment of error, neither party disputes at this stage that decedent was working as an independent contractor, not an employee, at the relevant time. Rather, the parties agree that the issue on appeal is whether the trial court correctly granted summary judgment, accepting that decedent was an independent contractor. Accordingly, we accept that summary judgment could not properly have been granted on the first of Cronin Logging's alternative grounds.

We focus therefore on whether plaintiff's second assignment of error establishes that summary judgment also could not properly have been granted on the alternative ground. We begin by considering whether that assignment of error provides a basis for reversal of the summary judgment on plaintiff's claim for wrongful death based on negligence. We then consider whether the assignment of error states a basis for reversal on plaintiff's purported claim under the ELL.

## WRONGFUL DEATH BASED ON NEGLIGENCE

We review the summary judgment record in the light most favorable to plaintiff to determine whether there is any genuine issue of material fact and whether Cronin

Logging is entitled to judgment as a matter of law. ORCP 47 C. There is no genuine issue of material fact if, based on the record viewed in the light most favorable to the adverse party, no reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 99, 45 P3d 936 (2002).

In its motion for summary judgment, Cronin Logging argued that plaintiff's common law negligence claim is precluded, because the relationship between Cronin Logging, as a contractor, and decedent, as a specialized subcontractor, supersedes the general rule that "duty" in a negligence case is limited only by foreseeability. *See George v. Myers*, 169 Or App 472, 487 n 13, 10 P3d 265 (2000), *rev den*, 331 Or 692 (2001) (recognizing the specialized contractor doctrine). In a negligence case, the specialized contractor doctrine potentially limits the duty of a principal who retains an independent contractor to undertake a specialized task within the contractor's expertise. *E.g.*, *Yowell v. General Tire & Rubber*, 260 Or 319, 325-26, 490 P2d 145 (1971); *Brown v. Boise-Cascade Corp.*, 150 Or App 391, 400-02, 946 P2d 324 (1997), *rev den* 327 Or 317 (1998).

In *Spain v. Jones*, 257 Or App 777, 784-90, 308 P3d 257, *rev den*, 354 Or 656 (2013), we extensively reviewed the evolution of the specialized contractor doctrine. We will summarize that history here to contextualize our conclusion.

The seminal case was *Yowell*, where an electrician employed by a company that repaired signs was injured while repairing a sign on the defendant's property. 260 Or at 320-21. The plaintiff (the electrician) leaned his ladder against a sign pole that had been improperly installed by another contractor. *Id*. at 321. The defective sign pole rotated, causing the plaintiff's ladder to fall, thereby injuring him. *Id*. The plaintiff sued the property owner. On review of an involuntary nonsuit granted against the plaintiff at the conclusion of the plaintiff's case, the Oregon Supreme Court affirmed, explaining:

> "A person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous

conditions surrounding the work which fall within a special expertise or knowledge, not shown to have been had by the person ordering the work, and which the third party impliedly represents to the public that he possesses."

*Id.* at 25.

Subsequent cases expanded the specialized contractor doctrine. In *George*, we held that the doctrine applies regardless of whether the principal is a landowner or a contractor. 169 Or App at 486. In *George*, we also addressed a perceived anomaly that a principal would be shielded from liability for an injury to a specialized contractor caused by a latent or hidden risk, but the principal might be liable if the risk were obvious. We extended the specialized contractor doctrine to shield the principal from liability even where the risk of injury was obvious. *Id.* at 487-88.

The specialized contractor doctrine was further expanded in *Boothby v. D.R. Johnson Lumber Co.*, 184 Or App 138, 55 P3d 1113 (2002), *aff'd*, 341 Or 35, 137 P3d 699 (2006). In *Boothby*, the defendant logging company contracted with the State of Washington to log an area of land. 184 Or App at 141. The defendant in turn subcontracted responsibility for the project, together with responsibility for all safety measures, to a second logging company, the decedent's employer. *Id.* The decedent, a logger, was then crushed to death by a log loader while working on the project. *Id.* We held that the specialized contractor doctrine applied, even though the defendant general contractor also had expertise in logging and the safe operation of a logging site. *Id.* at 159-60. Because responsibility for safety was delegated to the plaintiff's employer, the risk was inextricably intertwined with the specialized task for which the defendant had hired the decedent's employer. *Id.* at 159. Thus, *Boothby* holds that where the subcontract delegates responsibility for safety measures in undertaking the subcontractor's specialized task, the specialized contractor doctrine may shield the general contractor even if the general contractor also has expertise in the task.

We next applied the doctrine in *Spain*. There, the defendant, Jones, was building a home on his family's property. 257 Or App at 779. Jones was an experienced general

contractor. *Id*. at 779-80. He oversaw construction of the house, including the hiring of contractors. *Id*. at 780. He retained defendant Rossetto as the framing contractor. *Id*. Rossetto then retained defendant Brown as a framing subcontractor. *Id*. Rosetto notified Jones when the framing was mostly complete. *Id*. at 781. Jones then notified the plumbing contractor, the plaintiff's employer, that they were ready for the plumbing work. *Id*. The plaintiff was assigned to the project. When the plaintiff finished drilling vent holes in the roof, he started down from the second floor but stepped off a ledge. *Id*. at 779. He fell about nine feet and was injured. *Id*. There was no fall protection installed at the worksite. *Id*. at 779, 781.

The plaintiff sued Jones, Rossetto, and Brown, alleging, *inter alia*, common law negligence claims. 257 Or App at 779. All three defendants moved for summary judgment based on the specialized contractor doctrine. *Id*. at 782. The summary judgment record included evidence that Jones and Rossetto never discussed fall protection at any time before plaintiff was injured. *Id*. at 780. Jones assumed fall protection was Rossetto's responsibility. Rossetto had installed fall protection as part of his role as a framing contractor on previous jobs, but he had not done so here, because he did not have any employees on the worksite. *Id*. The plaintiff had worked at multi-story sites before where there was no fall protection, and he knew there was a danger of falling from exposed ledges. *Id*. at 781.

The trial court granted the motions for summary judgment, and the plaintiff appealed. We found the summary judgment record ambiguous as to how the parties allocated responsibility for fall protection. *Id*. at 789-91. There was no evidence of any pertinent contract term by which plaintiff's employer or Jones, Rossetto, or Brown expressly assumed responsibility for fall protection. *Id*. at 790. In the context of the shared worksite with no clear allocation of responsibility for safety, we could not say as a matter of law that the risk of falling was inextricably intertwined with the specialized task for which the plaintiff's employer was retained. *Id*. at 790-91.

With that background, we review the summary judgment record in this case. Cronin Logging contended

that the following facts established that the specialized contractor doctrine applied as a matter of law.

Howard Ranch owns extensive tracts of land in Harney County. The United States Department of Agriculture and the Harney Soil and Water Conservation District seek to remove invasive juniper trees in that area. To that end, they contracted to have Howard Ranch cut juniper trees on Howard Ranch's own property between 2014 and 2018. The entire project involved thousands of acres and was to be completed in units, with timelines set for each unit.

Cronin Logging was established in 2014 by Joe Cronin and his wife. Cronin had worked in logging for 40 years. In or around 2014, Cronin Logging contracted with Howard Ranch to cut juniper trees on Howard Ranch's property under Howard Ranch's government contracts. Until about 2015, Cronin Logging itself did some of the cutting. After that, Cronin Logging exclusively used subcontractors to perform the timber cutting under its contracts with Howard Ranch. Howard Ranch paid Cronin Logging, and Cronin Logging paid its subcontractors, by the acre of completed work.

Dirk Cornell and Ty Johnson contracted with Cronin Logging to do some of the work on the Howard Ranch property. They used their own equipment, provided their own insurance, and worked at their own pace.

Around 2017, decedent and his father, Gale Prince, approached Joe Cronin to inquire about such contract work for decedent. They had both previously worked as "contract cutters" for Cronin Logging. They had experience cutting and thinning juniper, and they were knowledgeable about the proper equipment and safety measures. Cronin Logging engaged decedent as a contract cutter. That contract, like the contract between Howard Ranch and Cronin Logging, and like the other subcontracts, was oral, not written. Consistent with its practice, Cronin Logging required decedent to have his own insurance, provide his own equipment, supervise his own employees, and manage his own sites. He would set his own hours, work at his own pace, and be paid by the area cleared, not by the hour.

Howard Ranch would inform Cronin Logging which units were next in line to be cut, and Cronin Logging would invite the subcontractors to select any units they wanted to undertake. Subcontractors were not required to select any units. Each unit had a deadline pursuant to the government contract. Those deadlines were always several months out at the time of a subcontractor's selection, allowing time to plan the work.

Decedent selected units he would be responsible for and hired two workers to assist him. He told them that he was the boss and that he had his own insurance. Decedent directed their work and provided their equipment. Generally, neither Cronin Logging nor any other contract cutters were present when decedent was undertaking his work on his units. Decedent provided saws and other equipment to his employees and paid his own employees' wages.

On the morning of October 2, 2018, decedent met with his employees at their work camp and directed them to the areas they were to cut. Decedent worked alone that day. When the employees returned to camp around 2:30 p.m., decedent was not there. The employees looked for him and found him dead, pinned under the branches of a juniper he had been cutting.

In response to Cronin Logging's motion for summary judgment, plaintiff argued that a principal may be liable under the ELL for an injury to an independent contractor, if the principal and the independent contractor are engaged in a common enterprise, if the principal retains a right to control the independent contractor's work, or if the principal actually controls the independent contractor's work. *See, e.g., Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 160, 61 P3d 918 (2003) (describing those three manners in which an indirect employer may be liable under the ELL). Plaintiff presented evidence in opposition to the motion for summary judgment attempting to show that those ELL standards were met.

First, plaintiff presented evidence of Cronin Logging's involvement in decedent's work on the project. The declaration of April Goddard averred that she was decedent's

girlfriend during the relevant times. She asserted that Cronin Logging provided chainsaw oil for decedent's use. There also was evidence that the chainsaw decedent was using at the time of the incident had "CRONIN" engraved on the side. Although other evidence suggests decedent purchased the used saw from someone other than Cronin Logging, an inference is available that Cronin Logging provided the chainsaw for decedent's use.

Additionally, plaintiff pointed to photographs attached to the Goddard Declaration as evidence that decedent used a skidder, a machine used to pile logs, that belonged to Cronin Logging. Goddard further averred that Joe Cronin and Dirk Cornell pressured decedent because he was behind schedule, telling him trees left standing would cost Howard Ranch and Cronin Logging money. Finally, the Goddard declaration described decedent as "employed with" Joe Cronin.

Further, plaintiff sought to establish that Cronin Logging retained control of decedent's work by virtue of the government contracts. Plaintiff contended that the contracts included an implied duty to retain control of the work where it is "inherently dangerous," and that Cronin Logging's contractual duties to comply with safety regulations are non-delegable. Plaintiff also argued that the contractual deadlines for completion of the work on each unit constituted retained control.

On appeal, plaintiff reiterates the arguments outlined above that were presented in the trial court, contending that the evidence supports holding Cronin Logging liable under the ELL through a "common enterprise," a "retained right to control," or a "retained actual control" theory.

We note that the photographs attached to the Goddard declaration were authenticated as representing the Howard Ranch property. While one photograph is claimed to show decedent inside the skidder, none of the photographs standing alone, nor anything else in the record, constitutes evidence that decedent ever operated the skidder. Further, plaintiff's reliance on express or implied terms of the government contracts is unavailing. The subcontract with decedent did not relieve Cronin Logging or Howard Ranch

of their own duty to perform under their contracts with each other or with the government, but we are unpersuaded that those primary contracts themselves create duties to subcontractors, as opposed to duties between the parties to those contracts. Moreover, the deadlines for completion were part of the contracts for each unit, not an intrusion into the manner of decedent's performance of his work.

More importantly, however, plaintiff's argument on appeal fails to address the issue of whether the trial court erred by granting summary judgment on plaintiff's negligence claim based on the specialized contractor doctrine. Plaintiff's argument instead focuses entirely on application of ELL principles. As such, plaintiff provides no coherent basis to reverse the summary judgment under the specialized contractor doctrine. In these circumstances, we must affirm the grant of summary judgment on plaintiff's claim for wrongful death based on negligence.

## THE EMPLOYER LIABILITY LAW

Plaintiff asserts as part of the second assignment of error that the trial court erred by granting summary judgment on a purported claim "under the [ELL]." As noted above, plaintiff's original and first amended complaints both expressly alleged a claim for common law negligence and a separate claim under the ELL. The second amended complaint, however, supersedes those earlier complaints and is the effective complaint in this case. ORCP 23 D; *Rodriguez v. The Holland, Inc.*, 328 Or 440, 445, 980 P2d 672 (1999) ("The amended pleading supersedes the previous pleading and becomes the operative pleading."). That second amended complaint was filed by substitute counsel and expressly states only a single claim for relief for wrongful death based on negligence.

The first several paragraphs of the effective complaint introduce the parties. Paragraph 5 alleges that decedent was an employee or agent of Cronin Logging and that Cronin Logging and Howard Ranch directed his work. Paragraph 6 alleges that Cronin Logging acted as the contractor and had at least partial control of the job site. Paragraph 7 alleges that Howard Ranch owned the property and contracted with

Cronin Logging. Paragraph 8 alleges that Howard Ranch was obligated to supervise and maintain applicable legal standards for decedent's work. Paragraph 9 alleges that Cronin Logging had common law and statutory or regulatory duties related to worker safety. Paragraph 10 alleges that Howard Ranch, as the property owner that contracted for the work at issue, owed statutory and regulatory duties to workers on the property, including the duty "*to ensure that business activities and work involving risk and danger to employees or the public that occurs on their property and for their benefit is conducted safely*" and in accordance with various Oregon Administrative Rules. (Emphasis added.) Paragraph 11 alleges that on October 2, 2018, decedent was working within the scope of his employment or contract. Paragraph 12 alleges that Howard Ranch is vicariously liable for Cronin Logging's negligence and statutory or regulatory violations. Paragraph 13 alleges that Cronin Logging missed a deadline and pressured decedent to complete his work as quickly as possible without regard for safety concerns. Paragraph 14 alleges decedent's workplace death.

The balance of the complaint elaborates the single count titled "Wrongful Death Due to Negligence." The specifications of negligence in paragraph 16 include failing to appropriately train decedent, failing to ensure he possessed appropriate protective equipment, failing to warn him of the risks of felling trees alone without appropriate equipment and training, failing to employ or hire an appropriate number of workers to safely complete the work, setting an unreasonable deadline that was impossible to safely meet, failing to adequately supervise the work to ensure it was performed safely, and failing to adhere to Oregon Administrative Rules on worker safety and tree cutting. The final paragraphs of the complaint allege causation and damages.

Under the Oregon Rules of Civil Procedure, "[e]ach separate claim [for relief] or defense must be separately stated." ORCP 16 C. A claim for common law negligence and a statutory claim under the ELL are two separate claims. *See, e.g.*, *Yeatts Whitman v. Polygon Northwest Co.*, 360 Or 170, 177, 379 P3d 445 (2016) ("[P]laintiff brought this action against [defendant], asserting *in separate claims*

that [defendant] was liable for plaintiff's injuries under the [ELL] \*\*\* and that [defendant] was also liable based on common-law negligence." (Emphasis added.)); *Woodbury*, 335 Or at 158 ("[P]laintiff filed an action against [the] defendant alleging *two claims*," one under the ELL and another for common-law negligence. (Emphasis added.)). The requirement to separately state each claim applies equally where, as here, the claims arise from the same factual circumstances. *Yeatts Whitman*, 360 Or at 192.

The effective complaint in this case never cites or mentions the ELL. The italicized text above summarizing paragraph 10 does track some of the text in ORS 654.305, the provision of the ELL that imposes a statutory standard of care for those having charge of work involving risk or danger to employees or the public. But paragraph 10 alleges only that the duty was owed, not that it was violated. Moreover, the single claim for relief makes no reference to the standards of the ELL. It is not possible to infer from paragraph 10, or from any other allegation in the complaint, a claim for relief under the ELL.

We recognize that plaintiff's counsel sincerely believed the complaint stated a claim under that law. The response memorandum on summary judgment argued extensively as to the viability of that purported claim. At the summary judgment hearing, defense counsel noted the absence of any remaining claim for relief under the ELL and objected to any belated attempt to reintroduce that abandoned claim back into the case. Plaintiff's counsel insisted the claim was part of the complaint and argued that if defense counsel were unclear about that, they should have moved to make the complaint more definite and certain. Plaintiff never requested leave to replead to properly state a claim under the ELL, and there is no assignment of error with respect to whether plaintiff should have been allowed to replead.

In all these circumstances, we must conclude there is no claim for relief under the ELL and no basis to allow plaintiff to pursue such a claim. The judgment of the circuit court must be affirmed.

Affirmed.